Jacob J. MEYER

v.

Charles C. FOTI, Jr., et al.
(Two Cases)

Civ. A. Nos. 88–4199, 88–5335.

United States District Court,
E.D. Louisiana.

July 10, 1989.

Thomas A. Gennusa, II, Gennusa, Brandt & McDonald, Metairie, La., for plaintiff Jacob J. Meyer.

Ernest L. O'Bannon, John C. Tollefson, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, La., for defendants Bruce L. Johnston, T. Allen Usry, Freeman R. Matthews, Alexander A. Lambert, Jr., and the Law Firm of Usry & Weeks.

Michael R. Fonthem, Dorothy H. Wimberly, Stone, Pigman, Walther, Wittmann & Hutchison, New Orleans, La., for defendants Charles C. Foti, Jr., Orleans Parish Criminal Sheriff, T. Allen Usry, Freeman R. Matthews, Alexander A. Lambert, Jr. and the Law Firm of Usry & Weeks.

Henry W. Kinney, III, New Orleans, La., for defendant Bruce Johnston.

JOHN V. PARKER, Chief Judge.*

## RULING ON MOTIONS

These consolidated matters, both of which are the outgrowth of inmate litigation against the Criminal Sheriff for the Parish of Orleans, have been submitted on various motions. Plaintiff is a United States magistrate before whom the inmate litigation against the Sheriff was pending. All thirteen district judges of the Eastern District have disqualified themselves in this action, thus the undersigned has been called upon.

### I. PLAINTIFF'S CLAIMS

On September 22, 1988, Magistrate Meyer filed Civil Action No. 88–4199 against Sheriff Charles C. Foti, Jr. and his lawyers, T. Allen Usry, Freeman R. Matthews, Bruce S. Johnston, Alexander A. Lambert,

* Middle District of Louisiana, sitting by designation.

Jr., and Usry & Weeks. Subject matter jurisdiction is allegedly based upon 28 U.S.C. § 1331, by virtue of the action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 372(c), with pendent jurisdiction over state law claims also asserted.[1]

Plaintiff, Jacob Meyer, is a full-time United States Magistrate for the Eastern District of Louisiana appointed in 1983 to serve an eight year term. Plaintiff alleges that all prisoner § 1983 actions are automatically referred to a magistrate under the local rules of court. The verbose and exceedingly repetitious allegations of the complaint overly complicate what is essentially a defamation action against Sheriff Foti and his attorneys for oral and written statements made in connection with 38 prison inmate suits against the Sheriff which had automatically been referred to Magistrate Meyer under the local rules of court.

According to the complaint, Sheriff Foti and the other defendants acting as the Sheriff's attorneys filed numerous memoranda and an affidavit by Foti in each of the 38 inmate suits in support of identical motions to revoke Foti's previously entered consent to proceed before Magistrate Meyer, under 28 U.S.C. § 636(c)(6), on the grounds of bias and prejudice of the magistrate. Plaintiff claims that those documents (as well as certain oral statements made at a meeting "with one or more federal judges") "conveyed and/or caused to be conveyed ... false and defamatory meanings and implications" through language portraying plaintiff as an unfair and biased magistrate who abuses the power of his office and who repeatedly violates federal law. Plaintiff further alleges that the judges of the Eastern District have removed him from all cases in which the

Sheriff or any of his deputies or the Orleans Parish Prison is a defendant. Plaintiff claims that he has been informed that he will not be reappointed as a magistrate in 1991, at the expiration of his statutory term (28 U.S.C. § 631(e)).

Plaintiff's first cause of action is based upon defendants, the Sheriff and his lawyers, allegedly conspiring to defame plaintiff and thereby deprive him of his civil rights in violation of 42 U.S.C. § 1983. Defendants allegedly destroyed his reputation as a fair and impartial judicial officer, deprived him of his "property interest in the continued and full enjoyment of his tenure as a federal magistrate" and his "legitimate expectation of reappointment" in 1991 and destroyed his opportunities for later employment.[2] Plaintiff claims that defendants acted in retaliation for his "daring to rule against Sheriff Foti" in ordering the inspection and photographing of the psychiatric unit of the Orleans Parish Prison and by enjoining the Sheriff from coercing statements from inmate witnesses and impeding prisoner § 1983 actions.

Plaintiff's second cause of action is that defendants conspired to deprive him of his right under 28 U.S.C. § 372(c) to have any charges that he engaged in conduct prejudicial to the effective administration of the court made in confidential proceedings. Plaintiff claims that § 372(c) provides the exclusive procedure for raising the complaints that he acted unfairly and coercively in his capacity as magistrate. Plaintiff claims the same improper motive and damages as set forth in his § 1983 defamation claim.

The third through eighth causes of action are essentially that defendants acted indi-

---

1. The court has previously determined that it does have subject matter jurisdiction over CA No. 88–4199, by order dated March 28, 1989. Plaintiff has attempted to state a § 1983 action for defamation within the parameters of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The determination of whether this court has jurisdiction and whether plaintiff has stated a § 1983 claim are usually separate inquiries. The failure to state a claim does not strip the court of jurisdiction unless the claim is "clearly immaterial, frivolous, and wholly insubstantial." *Daniel v. Ferguson,* 839 F.2d 1124

(5th Cir.1988). The court finds that the allegations are sufficient to require this court to consider the merits of the claims, as opposed to dismissing for want of subject matter jurisdiction.

2. Judge Beer granted plaintiff permission to file a first amended complaint on October 13, 1988, which adds the vague and conclusory allegation that "knowledge of the court's decision not to reappoint plaintiff" has been made public in an "intentional manner."

vidually or through various combinations of conspiracies to defame plaintiff in violation of state law. The ninth claim is a state law action for intentional infliction of mental distress. The final cause of action is an unspecified repetition of his prior claims.

On November 4, 1988, Magistrate Meyer filed an action in state court[3] alleging the same facts as alleged in Civil Action No. 88–4199 but limiting his theories of recovery to state law defamation and intentional infliction of emotional distress. On December 2, 1988, defendants removed on the basis of federal question jurisdiction and § 1442(a)(3) (suit against officer of a court of the United States).[4]

Prior to the removal of Civil Action No. 88–5335, plaintiff had moved to file a second amended complaint in Civil Action No. 88–4199 to withdraw without prejudice his state law claims of defamation and intentional infliction of emotional distress. Plaintiff's stated objective was to pursue all of his state law claims in the pending state court action. As the state court action has been removed, the motion to file a second amended complaint is now moot and will be denied on that basis.

## II. MOTION BY PLAINTIFF FOR JUDGE'S DISQUALIFICATION

In his motion, plaintiff contends that the undersigned judge is disqualified from presiding over these actions under 28 U.S.C. § 455(a) and Canon 3(C)(1) of the Code of Judicial Conduct as this court will necessarily have to pass judgment on the conduct of

at least six of the thirteen active judges of the Eastern District of Louisiana.[5] Plaintiff claims that an appearance of partiality exists as he asserts that the issues "have far-reaching consequences" and are of "paramount importance to the integrity of the entire federal judiciary." In his supporting memorandum, plaintiff argues that the average person might reasonably question the court's impartiality because district judges jointly attend judicial conferences and mingle socially and professionally at such events. Plaintiff further contends that the undersigned judge has recently worked "in close cooperation" with the judges of the Eastern District in drafting the Uniform Louisiana Local Rules of Court.[6]

The motion is premised on plaintiff's contention that this court will have to pass upon the conduct of fellow district judges. The motion is somewhat premature inasmuch as the court has yet to rule on plaintiff's ex parte motion to file a fourth amended complaint which seeks to join six judges of the Eastern District. In the absence of their joinder, it is clear that this court will not be called upon to review the actions or decisions of those judges, as has previously been pointed out to counsel for plaintiff. Therefore, the court must consider the propriety of the motion for leave to file the fourth amended complaint.[7]

## III. MOTION TO FILE FOURTH AMENDED COMPLAINT

▮ A trial court is required to "freely" give leave to amend "when justice so

---

**3.** Plaintiff had previously filed a parallel action in state court, which was voluntarily dismissed by plaintiff shortly after having been removed to this court by defendants.

**4.** Civil Action Nos. 88–4199 and 88–5335 were consolidated by this court per order dated February 23, 1989.

**5.** Under 28 U.S.C. § 455(a), a judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. The statute imposes a reasonable man standard in determining whether a judge should recuse himself. *Parliament Ins. Co. v. Hanson,* 676 F.2d 1069 (5th Cir.1982). The court disagrees with plaintiff's argument that a reasonable man would question this court's impartiality merely

because it would be required to pass on upon the conduct of fellow district judges. However, the court need not rule on this basis.

**6.** In point of fact, the "uniform" rules were actually drafted by a committee of the Louisiana State Bar Association. Those lawyers worked very hard over a period of years and they should not be deprived of their just recognition for a difficult job well done. The proposed rules were separately reviewed by each of the three Louisiana federal district courts.

**7.** Plaintiff has filed two motions for leave to amend a fourth time. The second motion actually seeks to correct a typographical error in ¶ XIX of the proposed fourth amended complaint.

requires." Fed.R.Civ.P. 15(a). In exercising its discretion in granting or denying leave to amend, the court may consider such factors as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendment, undue prejudice to the opposing party, and the futility of the amendment. *Jamieson By and Through Jamieson v. Shaw*, 772 F.2d 1205 (5th Cir.1985). Where substantial reason to deny leave to amend exists, the court should additionally consider prejudice to the movant, as well as judicial economy. *Id.*

■ When the theory presented in the amended complaint lacks legal foundation, the amendment would be futile and need not be allowed. Id.; *Pan–Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539 (5th Cir.1980), *cert. denied*, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981).

In his fourth amended complaint, plaintiff purportedly alleges a *Bivens*[8] action against Judges Heebe, Schwartz, Sear, Duplantier, Carr and Feldman. Plaintiff alleges that the judges conspired with the other defendants to deprive him of his rights to property, liberty and due process in several ways which the court has attempted to summarize as concisely and liberally as possible:

(1) by conspiring[9] with the other defendants to have plaintiff removed from all prisoner civil rights actions against Foti (with the ultimate purpose of having him removed from office "and/or not reappointed"); and

(2) by failing to prevent the wrongs of the other co-conspirators in violation of 42 U.S.C. § 1986;[10] and

(3) Judge Feldman meeting "ex parte" with defendant Usry the day before a show cause contempt hearing against the Sheriff wherein Judge Feldman "made suggestions" to Usry concerning the contempt motions set before Judge Feldman; and

(4) by making "an effort to remove plaintiff" from his office as magistrate in violation of 28 U.S.C. § 631(i) by advising him at a meeting presided over by Judge Schwartz that he would not be reappointed at the end of his term and by refusing to state the reasons for their decision; and

(5) by causing the reallotment of the "most-difficult and fact-intensive cases" to plaintiff in an attempt to constructively discharge him contrary to 28 U.S.C. § 631(i); and

(6) by issuing a general order of the court to prevent plaintiff from deposing Magistrate Wynne.

■ One of the most clearly established principles of American law is that absolute judicial immunity extends to all judicial acts which are not performed in the clear absence of all jurisdiction,[11] however erroneous the act and however evil the motive. *Johnson v. Kegans*, 870 F.2d 992 (5th Cir. 1989). Apparently originating in medieval times, judicial immunity serves to discourage collateral attacks and promote appellate procedures as the standard method for correcting judicial error. *Forrester v.*

---

**8.** *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narc.*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**9.** Judge Sear acted as a member of the conspiracy by granting the 38 motions to revoke the consent to proceed before Magistrate Meyer "with knowledge" that he was acting contrary to 28 U.S.C. § 636(c)(6). Judges Schwartz, Duplantier and Carr met with defendants, Usry and Foti, in the chambers of Judge Schwartz to discuss the 38 motions and "make certain" that the motions were granted to defame and stigmatize plaintiff. In a special meeting, the entire court agreed to remove plaintiff from all prisoner civil rights suits against Sheriff Foti; an order was entered by Judge Heebe to the effect.

**10.** This claim appears to be totally unsupported by any specific factual allegations. The court can only surmise that plaintiff contends that the judges should have ruled differently than they did. Thus, it appears that plaintiff is merely asserting an alternative legal theory as opposed to alleging the facts pertaining to the conspiracy.

**11.** Where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes. *Adams*, infra at p. 298. Plaintiff fails to allege the absence of all jurisdiction to enter the orders at issue.

*White,* 484 U.S. 219, 108 S.Ct. 538, 543, 98 L.Ed.2d 555 (1988). The doctrine of judicial immunity further protects judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants.[12] Id.

In drawing the line between judicial acts for which immunity is appropriate and administrative, legislative or executive functions that judges may on occasion be assigned to perform by law, the Supreme Court has indicated that a functional analysis is appropriate, i.e. it is the nature of the function performed and not the identity of the actor that is important. *Forrester,* supra.

Likewise, the factors which have generally been used by the Fifth Circuit to determine whether an act is judicial relate to the nature of the act itself: (i) whether the precise act complained of is a normal judicial function; (ii) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (iii) whether the controversy centered around a case pending before the court; and (iv) whether the acts arose directly out of a visit to the judge in his official capacity. *Adams v. McIlhany,* 764 F.2d 294 (5th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986). These factors are to be broadly construed in favor of immunity. *Johnson,* supra; *Adams,* supra. Immunity may be afforded even though one or more factors may be inapplicable if the policies underlying judicial immunity would be advanced. *Adams,* supra.

Concentrating on the nature of the act or function involved, there can be no doubt that the specific acts alleged to have been taken by Judges Heebe, Schwartz, Sear, Duplantier, Carr and Feldman were judicial rather than administrative or legislative acts. Plaintiff essentially seeks to collaterally attack the ruling made by Judge Sear on the motions for revocation of the referral orders, the order entered by Judge Heebe concerning the allotment of cases and General Order no. 1 relating to the deposition of Magistrate Wynne. Without doubt, the judges were performing judicial functions in entering such orders regardless of any malice or corruption of motive as claimed by plaintiff. Issuing court orders is the essence of the judicial process. See *Forrester,* supra, 108 S.Ct. at 544. Similarly, the ex parte meetings allegedly held by Judges Feldman, Schwartz, Duplantier and Carr related to pending litigation and are clearly subject to judicial immunity. Id. All of these acts were normal judicial functions occurring in the courtroom or judge's chambers centering around pending cases [13] and arising from contacts by the Sheriff or his attorneys with the judges in their official capacities.

The only alleged activity which might conceivably lie beyond the scope of judicial immunity is the "effort to remove" plaintiff from the office of magistrate [14] in violation of his right to procedural due process under 28 U.S.C. § 631(i). Plaintiff apparently contends that all of the judges (except Judge Heebe) advised plaintiff that he would not be reappointed in an effort to remove him, without stating any reasons for their decision. Section 631(i) provides, in pertinent part, that "a full specification of charges shall be furnished the magistrate, and he shall be accorded ... an opportunity to be heard on the charges" prior to the entry of "any order or removal" during a magistrate's term.

The allegation that the judges were trying to remove plaintiff by informing him that he would not be reappointed is conclusory and specious on its face. Plaintiff would apparently have this court infer that the judges were actually attempting to

---

**12.** Although not a litigant in the matters before the judges of the Eastern District, plaintiff has certainly reacted as if he were a litigant rather than a judicial officer.

**13.** The reallotment of prisoner rights cases is a direct and natural consequence of the 38 motions filed by defendant Foti.

**14.** In *Forrester,* supra, the Supreme Court found that a state judge was acting in an administrative capacity when he demoted and discharged a probation officer and consequently did not have absolute immunity.

goad plaintiff into resigning before his term expired in order to avoid the constraints of § 631(i). His "effort to remove" allegations essentially attempt to set forth a claim of attempted constructive discharge. A constructive discharge occurs when an employer makes conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign. *Kelleher v. Flawn*, 761 F.2d 1079 (5th Cir.1985). The determining factor is the effect of the conditions on a reasonable employee, not the employer's intentions. Id. Plaintiff has failed to allege any conditions that are so intolerable that a reasonable magistrate would feel compelled to resign.[15] Since plaintiff has not been removed from office, § 631(i) on its face is inapplicable. Therefore, the court finds that plaintiff's claims are wholly insubstantial and frivolous. See *Brinkmann v. Johnston*, 793 F.2d 111 (5th Cir. 1986). Under these circumstances, it would be futile to allow the proposed amended complaint to be filed.

 The court further finds that the filing of the fourth amended complaint would cause undue prejudice to the defendants by needlessly prolonging this matter. Thus, the court in its discretion determines that the amendment would not only be futile but would obviously prejudice all of the defendants and disserve the interest of judicial economy. On the other hand, it is unlikely that any prejudice will result to plaintiff in view of the obvious deficiencies of the proposed amended complaint.

Based on this determination, there is no need[16] for this court to pass upon the conduct of the judges of the Eastern District. Indeed, to the extent that the proposed amended complaint seeks to have this court pass upon the correctness or validity of orders issued by the Eastern District or judges thereof, the complaint seeks to have this court usurp the authority of the Court of Appeals which is obviously beyond its jurisdiction. Therefore, the motion for disqualification has no merit and will be denied.

## IV. PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL FOR DEFENDANTS AND FOR SANCTIONS[17]

Plaintiff moves to disqualify Michael R. Fontham, Noel J. Darce, Dorothy H. Wimberly and their law firm, Stone, Pigman, Walther, Wittman & Huchinson, from representing defendants, Charles C. Foti, Jr., T. Allen Usry, Freeman R. Matthews, Alexander A. Lambert, Jr., and Usry & Weeks, in these consolidated matters. There appear to be two bases for the motion.

 The first and more general argument is that there is a "pervasive relationship" between members and associates of Stone, Pigman and the judges of the Eastern District of Louisiana.[18] According to plaintiff, six present members and associates of the firm are former law clerks of six of the thirteen active judges of that court. Plaintiff contends that there is a "possibility" that Stone, Pigman may be able to obtain information from the judges "relative to plaintiff's complaint" which "is not equally available to plaintiff." The court finds no merit in this argument,

---

**15.** The allegation that the referrals he now gets are difficult cases rather than prisoner cases surely does not amount to "intolerable" conditions for a competent magistrate.

**16.** As noted, the court does not agree that simply because federal district judges are parties to the litigation, a federal judge must recuse himself, see note 5, supra; however, since the judges will not be parties, it is not necessary to consider this issue.

**17.** Although the motion is styled as one for an evidentiary hearing, there is clearly no need for such a hearing. Plaintiff has failed to indentify any facts which need to be established beyond those already established by the exhibits attached to his motion. Plaintiff's reliance on *Wilson P. Abraham Const. Corp. v. Armco Steel Corp.*, 559 F.2d 250 (5th Cir.1977) is accordingly misplaced.

**18.** The original motion for disqualification was based in part on connections between Stone, Pigman and past and present judges on the Fifth Circuit Court of Appeals and the Civil District Court for the Parish of Orleans. This basis appears to be even more attenuated than the "pervasive relationship" between the firm and the judges of the Eastern District. Disqualification is not warranted based upon these other more general relationships.

which is apparently based upon pure speculation.

■ The second and more specific argument is that two associates of Stone, Pigman who served as law clerks to Judge Sear and Judge Feldman may be called as witnesses against defendants. It appears that Michael Landry served as a law clerk to Judge Sear at the time the order was rendered revoking the reference of prisoner § 1983 actions to Magistrate Meyer. It further appears that Robert Harrington served as a law clerk to Judge Feldman when Judge Feldman declined to follow Magistrate Meyer's recommendation that certain contempt orders be issued against Sheriff Foti. Plaintiff fails to identify the substance of their testimony if called or how their testimony could be in any way material to the issues of this case. The court can only surmise that Magistrate Meyer intends to collaterally attack the correctness of the rulings made by Judge Sear and Judge Feldman. Even if this court were somehow empowered to review those decisions, which it undisputably is not, the correctness of those decisions simply has no bearing on the issues herein.

Plaintiff additionally refers to cases involving the disqualification of an attorney by his former client. As Magistrate Meyer has never been represented by Stone, Pigman, the court finds it incomprehensible that these cases would be cited here. Assuming that Magistrate Meyer has standing to complain, the applicable standard would be Rule 1.12 of the Rules of Professional Conduct of the Louisiana State Bar Association. See ULLR 20.04. Under Rule 1.12, absent consent of the parties, a former judicial law clerk (and his firm) is disqualified from representing anyone "in accordance with a matter in which the lawyer [i.e., the former judicial law clerk] participated personally and substantially" *unless* certain screening measures are taken. The actions before this court are only tangentially related and are not really the same proceedings in which Landry and Harrington may have participated as judicial law clerks.[19] However, if Rule 1.12 is applicable, it is clear from plaintiff's Exhibit "A" (letter from Michael Fontham to Chief Judge Heebe dated October 28, 1988) that the requisite screening measures have been taken.

Therefore, the court finds that the motion for disqualification is without merit and it will be denied. The court notes that plaintiff has additionally moved for sanctions under Rule 11 on the basis that the letter signed by Michael Fontham (Exh. A) is not well grounded in fact and that reasonable inquiry would have revealed the necessity of an evidentiary hearing. Since the court agrees with the precautionary stance taken by counsel for defendants, the court obviously finds that there is no basis for sanctions as to that firm.

## V. PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Plaintiff seeks to join as an additional defendant, Michaelle Pitard Wynne, United States Magistrate, United States District Court for the Eastern District of Louisiana. In the proposed third amended complaint, plaintiff alleges that Magistrate Wynne "conspired" with Sheriff Foti and his attorneys to deprive plaintiff of his rights to property and liberty in violation of the Fourteenth Amendment. Plaintiff essentially claims that Sheriff Foti schemed with his attorneys to deprive inmates of meaningful access to the courts by somehow compelling inmates to file frivolous § 1983 actions "without receiving any legal advice" resulting in unspecified "financial benefits" to defendants.[20] Plaintiff claims

---

**19.** The special relationship between judges and their law clerks was commented upon in *Hall v. Small Business Admin.*, 695 F.2d 175 (5th Cir. 1983). Law clerks are "sounding boards for tentative opinions" and are "privy to the judge's thoughts." Id. at p. 179. Once again, the thought processes of Judge Feldman and Judge Sear in acting on cases over which Magistrate Meyer presided are immaterial and consequent-

ly cannot provide an "unfair advantage" as claimed by plaintiff.

**20.** Plaintiff intimates that Magistrate Wynne was motivated to participate in the scheme because she was aware that the "operating budget" of the Eastern District is based upon the number of all civil filings including Foti prisoner suits. The allegation demonstrates a fairly com-

that he "began to adopt judicial procedures in an attempt to significantly reduce the filing of such frivolous Foti prisoner suits" causing defendants and Magistrate Wynne to scheme to remove plaintiff from all prisoner civil rights actions against Foti.

Magistrate Wynne has allegedly participated in the scheme by advising and assisting defendants in filing the 38 motions for revocation of the referral orders; by offering Foti's attorneys legal advice concerning an evidentiary hearing before Magistrate Meyer; by failing "to take any meaningful action" on two prisoner cases pending before her which attacked the effectiveness of the "Legal Advisor Program;" and by using her position as magistrate to "influence a judge" in an unsuccessful effort to frustrate discovery orders issued by plaintiff. Plaintiff further alleges that Sheriff Foti has been motivated by "political reasons" to "cast aspersions on plaintiff and defame his good name" in retailiation for discovery orders issued by plaintiff in the "grid cases" and that Magistrate Wynne has advanced and acquiesced in this "scandalization of plaintiff." Plaintiff claims that as a result of defendants' actions he has been defamed and stigmatized which has caused the court to advise him that he would not be reappointed at the end of his term and "that he should resign immediately."

The court finds that the proposed amendment to join Magistrate Wynne is based solely upon conclusory allegations wholly lacking any substance or legal foundation.[21] Plaintiff purportedly alleges a *Bivens* action against Magistrate Wynne; however, the proposed amendment liberally construed fails to disclose any action personally taken by Magistrate Wynne in violation of plaintiff's federal constitutional rights.[22] At most, Magistrate Wynne allegedly acted unethically in giving defendants legal advice. The allegations relating to Magistrate Wynne's motive and participation in a conspiracy[23] with the Sheriff and his lawyers are based upon pure speculation and illogical deductions. To state a conspiracy claim under the civil rights statutes, plaintiff must plead "operative facts" from which one may reasonably infer a prior illegal agreement. *Way v. Mueller Brass Co.*, 840 F.2d 303 (5th Cir. 1988). Accepting the factual allegations as true, one cannot reasonably infer such an agreement. Moreover, Magistrate Wynne's actions in cases pending before her are clearly subject to judicial immunity. In short, the court finds that it would not only be futile to allow the amendment but it is in the interest of justice and judicial economy to disallow the amendment. Accordingly, that motion will be denied.

## VI. MOTION TO QUASH DEPOSITION

Plaintiff has issued a notice to take the deposition of Magistrate Wynne and a motion to quash the deposition subpoena has been filed on her behalf. The subpoena duces tecum calls for production of the magistrate's "Standard Diary (Docket Book)," all correspondence relating to the "Legal Advisor" Program and correspondence relating to plaintiff, the Sheriff, the other defendants, some judges and the clerk of court. The motion to quash is predicated upon two bases: (a) no witness fee was tendered as required by Rule 45(c), Fed.R.Civ.P. and (b) the deposition and document production will either directly or in-

---

prehensive lack of understanding of the judicial budgetary process.

**21.** It is well established that a § 1983 plaintiff must state specific facts and not merely conclusory allegations. *Palmer v. City of San Antonio, Tex.*, 810 F.2d 514 (5th Cir.1987). Since plaintiff is not a pro se inmate with little or no education, he will be held to at least that pleading standard.

**22.** To state a *Bivens* action, plaintiff must allege a violation of his federal constitutional rights. *Lyons v. Sheetz*, 834 F.2d 493 (5th Cir.1987).

**23.** Plaintiff's conspiracy loop is thrown wider and wider and his capacity to file motions to amend the complaint apparently exceeds the court's capacity to pass upon them. While the court has been working on these motions, plaintiff has filed a motion to file a fifth amended complaint which would add Loretta G. Whyte, the clerk of court, and another of the Sheriff's lawyers as members of the conspiracy. Plaintiff has also filed a "Supplemental Motion for Judge's Disqualification." Both motions will be considered later.

directly inquire into and disclose the internal judicial activities and the thought and decision making process of Magistrate Wynne and the court itself.

On March 15, 1989, the judges of the Eastern District issued an order to Magistrate Wynne directing her to not respond to the subpoena (for which plaintiff attempts to join them as defendants—see supra).

■ Both points made are valid. Technically, the subpoena is invalid if no fee is tendered. *CF & I Steel Corp. v. Mitsui & Co. (USA), Inc.,* 713 F.2d 494 (9th Cir. 1983).

Since the technical defect may be cured, the subpoena will be quashed upon the other ground.

■ The papers submitted in the record make it abundantly clear that all areas of inquiry and papers which plaintiff seeks from Magistrate Wynne do indeed relate to her mental processes as a judicial officer concerning official duties—an area that but for the most extraordinary of situations must be fully protected from outside intrusion. *Gary W. v. State of Louisiana, DHHR,* 861 F.2d 1366 (5th Cir.1988). There are no extraordinary circumstances presented here and the subpoena must be quashed.

For the foregoing reasons: (1) the motion to disqualify the undersigned judge is hereby DENIED; (2) the motion to file the second amended complaint is hereby DENIED; (3) the motion to amend the complaint by adding judges of the Eastern District as parties defendant is hereby DENIED; (4) the motion to disqualify the lawyers for the defense is hereby DENIED; (5) the motion to amend the complaint so as to add Magistrate Wynne as a defendant is hereby DENIED; and (6) the motion to quash the subpoena issued to Magistrate Wynne is hereby GRANTED.

■ Plaintiff and his counsel are hereby given notice that the proposed amendment to add the judges and Magistrate Wynne as defendants are clearly frivolous [24] and that they are subject to Rule 11 sanctions which shall be determined later. The motion to disqualify the lawyers for the defense may well be subject to Rule 11 sanctions but the court reserves that determination for another day.

All other motions are hereby submitted and will be ruled upon as rapidly as the calendar of the undersigned judge permits.

---

**24.** Plaintiff has liberally sprinkled the familiar state court phrase "upon information and belief" throughout his pleadings, apparently under the notion that injection of this hackneyed shibboleth might in some manner shield him from Rule 11 sanctions. It will not.