Kenneth O. ASHELMAN,
Plaintiff-Appellant,

v.

Hon. Gary POPE, Judge Division I, Mohave County Superior Court; Mohave County Attorney's Office, Defendants-Appellees.

No. 84–1580.

United States Court of Appeals,
Ninth Circuit.

Argued En Banc and Submitted
April 29, 1986.

Decided July 8, 1986.

As Amended Aug. 12, 1986.

Daniel H. Bookin, Farella, Braun & Martel, San Francisco, Cal., for plaintiff-appellant.

William J. Ekstrom, Jr., Mohave Co. Atty., William F. McDonald, Deputy Co. Atty., Kingman, Ariz., for defendants-appellees.

Before BROWNING, ANDERSON, SKOPIL, SCHROEDER, FARRIS, ALARCON, POOLE, NELSON, BEEZER, HALL, and WIGGINS, Circuit Judges.

SKOPIL, Circuit Judge:

Kenneth O. Ashelman appeals the dismissal of his civil rights action against a state judge and county prosecutor. The question presented is whether a judge and prosecutor are immune from damages in a civil rights action charging them with conspiracy to predetermine the outcome of judicial proceedings. We conclude that the judge and prosecutor are immune. We affirm the district court's dismissal of the action.

## FACTS AND PRIOR PROCEEDINGS

Ashelman is a prisoner in custody of the Arizona Department of Corrections. While awaiting trial on criminal charges, Ashelman filed a pro se civil rights action against the state court judge and the County Attorney's Office. The complaint alleges the judge and prosecutor conspired to deprive Ashelman of (1) effective assistance of counsel; (2) access to a law library; (3) services of an investigator; (4) subpoenas for witnesses; and (5) supplies necessary for the preparation of his legal defense. Ashelman sought injunctive and declaratory relief.

After defendants answered, Ashelman filed a document entitled "Supplemental Pleadings" which further developed his conspiracy allegations, added as a defendant the prosecuting deputy county attorney, and sought damages in addition to injunctive and declaratory relief. The court construed the document as an amended pleading and instructed Ashelman to move to file an amended complaint pursuant to Fed.R.Civ.P. 15(a). Ashelman moved to file an amended complaint and lodged the proposed amendments with the court. His proposed amendments included most of his "supplemental pleadings" and also added the county sheriff as a defendant.

The district court dismissed Ashelman's complaint and denied the motion to amend. The court reasoned that the judge was protected by judicial immunity. The action against the County Attorney's Office was barred because the doctrine of respondeat superior did not apply absent allegations that actions were taken pursuant to regulations, customs, ordinance, or approved practice by the county. Process was ordered not to be filed against the prosecutor and sheriff because the prosecutor was protected by prosecutorial immunity and the sheriff was already a party to another action brought by Ashelman. Ashelman's various motions to compel discovery were accordingly denied. Ashelman timely appealed the dismissal of his action.

On appeal, we initially reversed and remanded. *Ashelman v. Pope*, 769 F.2d 1360 (9th Cir.1985). Relying on Ninth Circuit authority, we held that a judge and prosecutor are not protected by immunity when they conspire to deprive a defendant of constitutional rights. *Id.* at 1362 (citing *Beard v. Udall*, 648 F.2d 1264 (9th Cir. 1981)). We affirmed only the dismissal of the County Attorney's Office.[1] *Id.* at 1363.

---

1. Ashelman concedes that the district court properly dismissed the complaint as to the County Attorney's Office. The doctrine of respondeat superior does not apply in section 1983 civil rights cases. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Further, Ashelman's complaint failed to allege that he was injured pursuant to any regulation, custom, or approved practice of the county. *See id.*

Ashelman's original complaint also alleged that defendants conspired to deprive him of the equal protection of the laws in violation of 42 U.S.C. § 1985(3) (1982). The district court nev-

The decision was subsequently withdrawn upon a majority vote of active judges. *Ashelman v. Pope,* 778 F.2d 539 (9th Cir. 1985).

## DISCUSSION

### A. Judicial and Prosecutorial Immunity.

■ Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities. *Richardson v. Koshiba,* 693 F.2d 911, 913 (9th Cir.1982). Immunity does not extend, however, to actions for prospective injunctive relief. *Pulliam v. Allen,* 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565 (1984); *Richardson,* 693 F.2d at 913 n. 8. In his initial complaint, Ashelman sought only injunctive and declaratory relief. Since Ashelman's criminal proceedings are over, however, the equitable relief sought is no longer available. Only the monetary relief sought in his amended complaint may be available. Thus, the propriety of the district court's dismissal without leave to amend turns on whether immunity bars recovery of money damages from any of the defendants. If judicial and prosecutorial immunity bar recovery, no amendment could cure the deficiency and the action was properly terminated on a motion to dismiss.

■ Judges are immune from damage actions for judicial acts taken within the jurisdiction of their courts. *See Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1872). Title 42 U.S.C. § 1983 (1982) was not intended to abolish the doctrine of judicial immunity. *Pierson v. Ray,* 386 U.S. 547, 554–55, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967). Judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plain-

er specifically addressed that claim. Nevertheless, because Ashelman failed to allege that the defendants' actions were motivated by a racial or other invidiously discriminatory animus, his complaint failed to state a claim under section

tiff." *Cleavinger v. Saxner,* — U.S. —, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985) (quoting *Bradley,* 80 U.S. (13 Wall.) at 347).

■ Prosecutors are also entitled to absolute immunity from section 1983 claims. *Imbler v. Pachtman,* 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976). Such immunity applies even if it leaves "the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Id. See also Campbell v. Maine,* 787 F.2d 776, 778 (1st Cir.1986) (no bad faith exception to absolute immunity of prosecutor).

■ The immunity afforded judges and prosecutors is not absolute. A judge lacks immunity where he acts in the "clear absence of all jurisdiction," *Bradley,* 80 U.S. (13 Wall.) at 351, or performs an act that is not "judicial" in nature. *Stump v. Sparkman,* 435 U.S. 349, 360, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978). The factors relevant in determining whether an act is judicial "relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Sparkman,* 435 U.S. at 362, 98 S.Ct. at 1107. In *Sparkman,* the Supreme Court held that a judge's ex parte approval of a young woman's sterilization was a judicial act performed within the apparent scope of the court's broad, general jurisdiction. *Id.* at 357–64, 98 S.Ct. at 1105–09.

Other circuits have expanded *Sparkman's* analysis. To determine if a given action is judicial, those courts focus on whether (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose

1985(3). *See Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Briley v. State of California,* 564 F.2d 849, 859 (9th Cir.1977).

directly and immediately out of a confrontation with the judge in his or her official capacity. *See, e.g., Dykes v. Hosemann,* 776 F.2d 942, 946 (11th Cir.1985) (en banc) (per curiam) (citing *Harper v. Merckle,* 638 F.2d 848, 858 (5th Cir.), *cert. denied,* 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981)); *Adams v. McIlhany,* 764 F.2d 294, 297 (5th Cir.1985) (citing *McAlester v. Brown,* 469 F.2d 1280, 1282 (5th Cir.1972)), *cert. denied,* —— U.S. ——, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986). These factors are to be construed generously in favor of the judge and in light of the policies underlying judicial immunity. *Adams,* 764 F.2d at 297.

■■■ To determine if the judge acted with jurisdiction, courts focus on whether the judge was acting clearly beyond the scope of subject matter jurisdiction in contrast to personal jurisdiction. *E.g., Dykes,* 776 F.2d at 948–49; *Green v. Maraio,* 722 F.2d 1013, 1017 (2nd Cir.1983). Where not clearly lacking subject matter jurisdiction, a judge is entitled to immunity even if there was no personal jurisdiction over the complaining party. *E.g., Dykes,* 776 F.2d at 948–49; *Green,* 722 F.2d at 1017. *But see Rankin v. Howard,* 633 F.2d 844, 848–49 (9th Cir.1980) (if a court lacks personal jurisdiction, it lacks "all jurisdiction" and loses judicial immunity), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981). Jurisdiction should be broadly construed to effectuate the policies supporting immunity. *Holloway v. Walker,* 765 F.2d 517, 523 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985).

■■■ Prosecutorial immunity has developed along much the same lines as judicial immunity. Immunity extends to protect a prosecutor who acts within his or her authority and in a quasi-judicial capacity. *Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 994–96. The focus is on the nature or function of the prosecutor's activity. *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 678 (9th Cir. 1984). Where a prosecutor acts as an advocate "in initiating a prosecution and in presenting the state's case," absolute immunity applies. *Id.* (quoting *Imbler,* 424 U.S. at 431, 96 S.Ct. at 995).

This circuit has developed a somewhat narrow view of when judicial and prosecutorial immunity should bar civil rights actions. In *Rankin,* 633 F.2d at 847, we held that a judge's private, prior agreement to decide in favor of one party was not a judicial act giving rise to judicial immunity. There, a state judge allegedly agreed to issue ex parte guardianship papers enabling parents to take custody of their son for "deprogramming" from the Unification Church. *Id.* at 846. We reasoned that such a prior agreement is not "a function normally performed by a judge." *Id.* at 847. We further concluded that acts taken in the absence of personal jurisdiction are not to be protected by judicial immunity. *Id.* at 849.

In *Beard,* 648 F.2d at 1270, we held that a judge could be liable for participating in a conspiracy if the judge's acts were nonjudicial. Beard alleged that a state judge conspired with a prosecutor to incarcerate him. *Id.* We reasoned that "[e]ven though the judge's disposition of the proceeding remains a judicial act, under *Rankin* the prior agreement is deemed the essential cause of any deprivation of federally protected rights." *Id.* at 1269. Thus, for purposes of applying immunity, we focused not on the judge's ultimate acts which appeared to be judicial, but rather on the underlying agreement to conspire which *Rankin* declared to be nonjudicial.

Turning to the prosecutor's immunity, we indicated that the immunity of a prosecutor is based upon the same considerations that underlie judicial immunity. *Id.* at 1270–71. We held that "where a prosecutor faces an actual conflict of interest, and files charges he or she knows to be baseless, the prosecutor is acting outside the scope of his or her authority and thus lacks immunity." *Id.* at 1271 (footnote omitted).

Our decisions have been criticized. In *Dykes,* the Eleventh Circuit, sitting en banc, held that a judge who conspires to deny a party federal constitutional rights is

immune from a damage action under section 1983. *Dykes,* 776 F.2d at 946. "Were we to follow *Rankin,* judges, on mere allegations of conspiracy or prior agreement, could be hauled into court and made to defend their judicial acts, the precise result judicial immunity was designed to avoid." *Id.* The court in *Dykes* also questioned *Rankin's* holding that a judge loses immunity, regardless of the existence of subject matter jurisdiction, by acting in the absence of personal jurisdiction. *Id.* at 948. "We view [*Rankin*] as contrary to Supreme Court and Eleventh Circuit precedent as well as an unwise restriction of a time-tested doctrine." *Id.* (footnote omitted).

In *Holloway,* the Fifth Circuit concluded that "*Rankin* is inconsistent with the fundamental policies underlying judicial immunity." *Holloway,* 765 F.2d at 522. *See also Krempp v. Dobbs,* 775 F.2d 1319, 1321 (5th Cir.1985) (noting that Fifth Circuit had explicitly rejected *Rankin*). *Holloway* found that "the need for a private right of action against a judge is no greater and the threat to the independence of judicial decision-making is no less where the allegations are of conspiracy or bribery than where the allegations are of bad faith, personal interest or outright malevolence." *Holloway,* 765 F.2d at 523. Thus, the Fifth Circuit concluded that "where the alleged harm, though resulting from a bribe or conspiracy, was inflicted by acts to which absolute immunity would apply, the complaint is insufficient to avoid judicial immunity." *Id.*[2]

Our holding in *Beard* on prosecutorial immunity also has been criticized. In *Lerwill v. Joslin,* 712 F.2d 435, 436 (10th Cir.

1983), a prosecutor initiated a prosecution unauthorized by law. The court held he was immune from damages. *Id.* at 440. In contrast, the prosecutor in *Beard* was not immune even though he had performed a quintessentially prosecutorial act—filing criminal charges. *Beard,* 648 F.2d at 1271. The court in *Lerwill* complained that "*Beard* fails to ... explain how to define the scope of a prosecutor's authority and makes no mention of the source of the boundaries that the prosecutor transgressed." *Lerwill,* 712 F.2d at 440 n. 5.

In light of the criticism directed to *Rankin* and *Beard,* we elect to reexamine the scope of judicial and prosecutorial immunity. At the heart of our reexamination is the task of defining which judicial and prosecutorial acts are to be protected from scrutiny by the immunity doctrines. The judges' ultimate acts in *Beard* and *Rankin* were obviously judicial in nature. In *Beard* the judge entered a temporary restraining order. In *Rankin* the judge issued a guardianship order. Similarly, the prosecutor's actions in *Beard* of initiating a prosecution was clearly an act within his authority. Although "grave procedural errors" were made in each instance, such errors are not enough to deprive the actors of immunity. *Sparkman,* 435 U.S. at 359, 98 S.Ct. at 1106. Unless the actions taken were clearly without jurisdiction (judges) or authority (prosecutors), immunity should have applied.

We concluded in *Beard* and *Rankin* that no immunity applied because we focused not on these ultimate acts but rather on the act of conspiring to predetermine the outcome of the proceeding. There appears to be no other authority for making

---

**2.** Both *Dykes,* 776 F.2d at 946, and *Holloway,* 765 F.2d at 522, rely in part on *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). In *Sparks,* the Supreme Court noted that a judge alleged to have conspired with private parties was "properly dismissed from the suit on immunity grounds." *Sparks,* 449 U.S. at 27, 101 S.Ct. at 186. The precedential strength of that statement, however, is debatable. The Supreme Court granted certiorari on the issue of derivative immunity, 445 U.S. 942, 100 S.Ct. 1336, 63 L.Ed.2d 775 (1980), and de-

nied certiorari on the issue of judicial immunity, 445 U.S. 943, 100 S.Ct. 1339, 63 L.Ed.2d 777 (1980). *See Rankin,* 633 F.2d at 847 n. 9. Nevertheless, *Dykes* and *Holloway* rely on *Sparks* in rejecting this court's reasoning in *Beard* and *Rankin.* See also *Scott v. Schmidt,* 773 F.2d 160, 164 n. 6 (7th Cir.1985) (*Beard* cannot be reconciled with Supreme Court's decision in *Sparkman*); *Green,* 722 F.2d at 1016 (citing *Sparks* for proposition that a judge is absolutely immune from damage liability for acts performed in judicial capacity).

the underlying conspiracy the determinative act in deciding whether immunity should be available. Judges' immunity from civil liability should not be "affected by the motives with which their judicial acts are performed." *Cleavinger,* 106 S.Ct. at 500 (quoting *Bradley,* 80 U.S. (13 Wall.) at 347). Intent should play no role in the immunity analysis. *O'Neil v. City of Lake Oswego,* 642 F.2d 367, 370 (9th Cir.1981). Moreover, allegations that a conspiracy produced a certain decision should no more pierce the actor's immunity than allegations of bad faith, personal interest or outright malevolence. *Holloway,* 765 F.2d at 523.

 The primary policy of extending immunity to judges and to prosecutors is to ensure independent and disinterested judicial and prosecutorial decisionmaking. *Adams,* 764 F.2d at 297; *see also Bradley,* 80 U.S. (13 Wall.) at 347–53 (identifying other factors in support of judicial immunity). To effectuate this policy, we will broadly construe the scope of immunity. *Adams,* 764 F.2d at 297 n. 1 (exceptions to immunity should be narrow and technical distinctions should be avoided). To foreclose immunity upon allegations that judicial and prosecutorial decisions were conditioned upon a conspiracy or bribery serves to defeat these policies. *See Gregory v. Thompson,* 500 F.2d 59, 63 (9th Cir.1974) (what constitutes conduct falling within the scope of immunity must be determined in part by looking at the purposes underlying the doctrine of immunity).

 We conclude that our prior decisions construed the immunity doctrines too narrowly by focusing on underlying actions instead of looking to the ultimate acts. Although the Supreme Court has not clearly rejected the analysis of our prior decisions, various circuit courts have explicitly and persuasively rejected that analysis. In addition, policy considerations favor a liberal application of immunity. We therefore hold that a conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immu-

nity extended to judges and prosecutors. As long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisidiction, immunity applies. Prosecutors are absolutely immune for quasi-judicial activities taken within the scope of their authority. To the extent that *Rankin* and *Beard* are to the contrary, they are overrruled.

**B. Right to Amend.**

 We turn next to whether the district court erred in denying Ashelman's motion to amend. We review for an abuse of discretion the denial of leave to amend pleadings after a responsive pleading has been filed. *Jones v. Community Redevelopment Agency,* 733 F.2d 646, 650 (9th Cir.1984). Pro se plaintiffs should be given an opportunity to amend their complaints to overcome any deficiencies unless it clearly appears the deficiency cannot be overcome by amendment. *Gillespie v. Civiletti,* 629 F.2d 637, 640 (9th Cir.1980). For review purposes, we accept all material allegations as true. *Brothers v. First Leasing,* 724 F.2d 789, 790 n. 1 (9th Cir.), *cert. denied* —— U.S. ——, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984). Further, we hold his pro se pleadings to a less stringent standard than formal pleadings prepared by lawyers. *See Gillespie,* 629 F.2d at 640 (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)).

 Nevertheless, even under such favorable review, we conclude that Ashelman's amended pleadings do not contain allegations sufficient to overcome judicial and prosecutorial immunities. Ashelman makes no allegations that the judge's ultimate actions were not judicial or beyond the scope of the court's jurisdiction or that the prosecutor's ultimate activities were performed without authority. The district court did not err in refusing to allow Ashelman to amend his pleading since the proposed amendment would not overcome that deficiency.

## CONCLUSION

Our examination of the doctrines of judicial and prosecutorial immunity convinces us to construe more broadly the availability of immunity. Although a few may suffer because of the loss of seemingly meritorious claims against judges and prosecutors, the policies in support of immunity can only be fulfilled if immunity is freely granted and the exceptions are few and narrowly drawn. Allegations of conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding are insufficient to overcome those immunities.

AFFIRMED.