990 F.2d 1256
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Harold A. DAVIS, Plaintiff-Appellant,
v.
William P. BEKO, former District Judge; Philip H. Dunleavy,
Nye County District Attorney; George B. Devel, former Nye
County Deputy District Attorney; Jeffrey D. Morrison,
former Nye County Deputy District Attorney; NYE COUNTY;
Ronald E. Floyd; John F. Smith, et al., Defendants-Appellees.
 No. 92-15483.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 11, 1993.
Decided March 19, 1993.
 
 Before GOODWIN, NOONAN and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Harold Davis (Davis) appeals the dismissal of his 42 U.S.C. §§ 1983 and 1985 claims against various defendants, including Judge William Beko (Beko), individual members of the grand jury, the prosecuting attorney, Philip Dunleavy (Dunleavy) and an investigator for the district attorney's office, John Adams (Adams). The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 and affirm.
 
 FACTS AND PROCEDURAL HISTORY
 
 3
 During all relevant times related to this appeal, Davis was the Sheriff for Nye County, Nevada. His complaint alleged that Beko and Dunleavy conspired to deprive him of his constitutional rights. He claims that they demanded his resignation as sheriff under threat of prosecution for his alleged misconduct in obtaining travel compensation by false pretenses. Davis further alleges that because he refused to resign, the district attorney's office filed a criminal complaint against him and that Judge Beko impaneled a limited grand jury to inquire into the misconduct.
 
 
 4
 After the Nye County District Court dismissed the grand jury indictment, Davis instituted this civil rights action against Beko, the grand jurors, Dunleavy and Adams.[1] Davis now appeals the district court's orders dismissing his action against each of the defendants. He contends that none of the appellees are immune from this civil rights action.[2]
 
 STANDARD OF REVIEW
 
 5
 A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is a question of law reviewed de novo. Oscar v. University Students Co-operative Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, 113 S.Ct. 655 (1992). Review is limited to the contents of the complaint. Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1989). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id. (internal quotations omitted). The issue of whether a judge is entitled to judicial immunity is reviewed de novo. Crooks v. Maynard, 913 F.2d 699, 700 (9th Cir.1990).
 
 DISCUSSION
 I. Judicial Immunity
 
 6
 Davis argues that Judge Beko violated his constitutional rights in that he conspired with other officials to force Davis's resignation and that he impaneled a limited grand jury because Davis refused to resign. We reject this contention.
 
 
 7
 "Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities." Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir.1986) (en banc). Furthermore, judicial immunity applies to § 1983 claims. O'Neil v. City of Lake Oswego, 642 F.2d 367, 368 n. 3 (9th Cir.1981). A judge is protected if: (1) he performed a "judicial act," and (2) he did not act in "clear absence of jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356-57, 360 (1978).
 
 A. Judicial Act
 
 8
 In determining whether an act is "judicial," we consider "the nature of the act itself, i.e., whether it is a function normally performed by a judge." Crooks, 913 F.2d at 700 (internal quotations omitted) (judge protected by absolute judicial immunity when he used his contempt power to enforce administrative order he had previously issued). Although absolute judicial immunity does not extend to administrative, legislative and executive functions that a judge may perform, id. (citing Forrester v. White, 484 U.S. 219, 227-29 (1988)), immunity applies "[a]s long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction...." Ashelman, 793 F.2d at 1078 (emphasis added) (focus is upon the judge's ultimate acts rather than his underlying actions). In Ashelman, this court concluded that although the actions of the judge and prosecutor in conspiring to predetermine the outcome of a judicial proceeding were improper, they were nonetheless entitled to immunity. Id.
 
 B. Clear Absence of Jurisdiction
 
 9
 "Jurisdiction is construed broadly where the issue is the immunity of a judge." Crooks, 913 F.2d at 701; see also Ashelman, 793 F.2d at 1076. Furthermore, acts performed in "excess" of judicial authority do not deprive the judge of immunity. Schucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir.), cert. denied, 488 U.S. 995 (1988).
 
 
 10
 In the present case, the ultimate acts Judge Beko performed were "judicial" in nature and were not in clear absence of jurisdiction. He had authority pursuant to Nev. Const. Art. 6, § 5 and Nev.Rev.Stat. §§ 6.110-6.145 and § 172.047 to impanel the grand jury. "A district judge may impanel a grand jury to inquire into a specific limited matter among those set forth in NRS 172.175." Nev.Rev.Stat. § 172.047.[3]
 
 
 11
 Davis refused to resign as Nye County Sheriff in response to threats of prosecution for obtaining travel compensation by false pretenses. Judge Beko impaneled a grand jury to investigate Davis's alleged misconduct. Judge Beko was acting within his authority and jurisdiction. Even were he acting in excess of his jurisdiction, he is protected because there was not a clear absence of jurisdiction. See Schucker, 846 F.2d at 1204 (judicial immunity applies even assuming judge misinterpreted statute and acted "in excess of his jurisdiction").
 
 
 12
 Judge Beko is entitled to immunity regardless of his intent. See O'Neil, 642 F.2d at 370 (Evil intent is not sufficient element for piercing judicial immunity: judge will not be deprived of immunity because the action he took was done maliciously). "Moreover, allegations that a conspiracy produced a certain decision should no more pierce the actor's immunity than allegations of bad faith, personal interest or outright malevolence." Ashelman, 793 F.2d at 1078. We conclude that Judge Beko is entitled to immunity because he performed ultimate judicial acts and properly exercised jurisdiction.
 
 
 13
 Davis also argues that Judge Beko conspired with Dunleavy to draft an anonymous letter requesting a Nye County Commissioner to persuade Davis to resign and that Judge Beko is not entitled to immunity for that act. However, Davis has failed to allege a causal connection between drafting the letter and any injury he suffered. Furthermore, Judge Beko's alleged conduct was purely private. Because private conduct does not create a cognizable claim under § 1983, District of Columbia v. Carter, 409 U.S. 418, 424 (1973), Davis is precluded from maintaining this action.
 
 II. Grand Jury Immunity
 
 14
 Although Davis concedes that grand jurors are entitled to the same immunity as judges, he nonetheless contends that they are not protected in this case because they acted without jurisdiction when they indicted him for acts which occurred outside Nye County. This argument is without merit.
 
 
 15
 Grand jurors perform quasi-judicial functions; therefore, they are entitled to immunity. Imbler v. Pachtman, 424 U.S. 409, 423 n. 20 (1976); see Butz v. Economou, 438 U.S. 478, 509-10 (1978); see also Schlegel v. Bebout, 841 F.2d 937, 942 (9th Cir.1988) ("absolute immunity will be granted to those who fall within one of the conscribed areas of judicial or prosecutorial immunity").
 
 
 16
 The Nye County grand jury acted within its jurisdiction. "The grand jury may inquire into all public offenses triable in the district court or in a justice's court, committed within the territorial jurisdiction of the district court for which it is impaneled." Nev.Rev.Stat. § 172.105 (emphasis added). Even if we accept the rule Davis posits, i.e., a grand jury has no jurisdiction over acts that occur outside the county for which the jury is impaneled, the Nye County grand jury had jurisdiction, and is therefore entitled to immunity. In his complaint, Davis states that his alleged misconduct was the result of "travel from Beatty, Nevada, ... to Tonopah where [he] had official business to conduct...." Because both towns are located in Nye County, and because the travel vouchers were submitted in Nye County, the grand jury acted within its jurisdiction.
 
 
 17
 We also reject Davis's argument that the grand jury acted in excess of its jurisdiction. "A grand jury that is impaneled for a specific limited purpose shall not inquire into matters not related to that purpose." Nev.Rev.Stat. § 172.047. Neither Davis's complaint nor his brief alleges facts to support this claim.
 
 
 18
 Indeed, Davis does not dispute the grand jury's responsibility to investigate whether a crime was committed and its duty to investigate his past activities. Rather, he claims the grand jury failed in its responsibility to protect him from "unfounded and arbitrary criminal prosecution." The case he cites in support of that proposition, United States v. Calandra, 414 U.S. 338, 343 (1974), does not hold grand jurors liable for returning an unfounded indictment. Calandra merely states that one of the grand jury's responsibilities is to help ensure that unfounded prosecutions do not occur. Id. A grand jury may return an unfounded indictment on occasion. That does not mean, however, that the grand jury is subject to civil liability.
 
 
 19
 Therefore, because the grand jury fulfilled the duty for which it was impaneled, we affirm dismissal of the complaint against the grand jury.
 
 III. Prosecutorial Immunity
 
 20
 Davis next claims that the district court erred in dismissing the action against the district attorney (Dunleavy) and his investigator (Adams), arguing that they are entitled to neither absolute nor qualified immunity.
 
 A. Dunleavy
 
 21
 Prosecutors are entitled to absolute immunity from § 1983 claims for their quasi-judicial actions as long as those acts are performed within the scope of their authority. Ashelman, 793 F.2d at 1075, 1078; Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 678 (9th Cir.1984). "Such immunity applies even if it leaves the genuinely wronged [plaintiff] without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." Ashelman, 793 F.2d at 1075 (internal quotations omitted).
 
 
 22
 A prosecutor acts within his authority when he performs a kind of act having more or less connection with the general matters committed to his control or supervision. Ybarra, 723 F.2d at 678 (prosecutor did not exceed his authority when he allegedly failed to preserve exculpatory evidence). Thus, a prosecutor does not exceed the scope of his authority if he performs an act connected with matters committed to his control. Id.
 
 
 23
 Immunity applies only when the challenged actions are quasi-judicial. A prosecutor's role as an advocate requires him to perform many preliminary and preparatory functions both in initiating the criminal process and in preparing for trial. See Imbler, 424 U.S. at 431 n. 33. Additionally, "investigative functions carried out pursuant to the preparation of a prosecutor's case also enjoy absolute immunity." Ybarra, 723 F.2d at 679 (internal quotations and brackets omitted).
 
 
 24
 We have applied absolute immunity where a prosecutor is attempting to determine whether to bring charges. See Demery v. Kupperman, 735 F.2d 1139, 1144 (9th Cir.1984), cert. denied, 469 U.S. 1127 (1985) (applied absolute prosecutorial immunity in a § 1983 suit where the deputy attorney general had allegedly induced witnesses to testify falsely). In Demery, the court reasoned that "conferring with potential witnesses for the purpose of determining whether to initiate proceedings is plainly a function intimately associated with the judicial phase of the criminal process, and is therefore a quasi-judicial function to which the reasons for absolute immunity apply with full force." Id. (internal quotations and citations omitted) (emphasis added). Dunleavy's actions were within the scope of his authority as a prosecutor and were quasi-judicial.
 
 
 25
 Even assuming Dunleavy acted in bad faith, such an allegation is not sufficient to overcome immunity. Ashelman, 793 F.2d at 1075; Demoran v. Witt, 781 F.2d 155, 158 (9th Cir.1986). Although Dunleavy's actions may have been improper, he is still entitled to immunity. See Ashelman, 793 F.2d at 1078. Therefore, we affirm the district court in dismissing the action against him.
 
 B. Adams
 
 26
 Similarly, the district court properly granted summary judgment in favor of Adams, the district attorney's investigator. This court has held that "[i]nvestigators, employed by a prosecutor and performing investigative work in connection with a criminal prosecution, are entitled to the same degree of immunity as prosecutors." Gobel v. Maricopa County, 867 F.2d 1201, 1203 n. 5 (9th Cir.1989).
 
 
 27
 In this case, Adams was employed by the Nye County District Attorney's office. The district court concluded that Adams was merely "an information gatherer for Dunleavy" and that his actions were made in connection with investigating and initiating prosecution. Therefore, we conclude that he is entitled to the same immunity as Dunleavy.
 
 IV. Judicial Conscience
 
 28
 Finally, Davis contends that the conduct of appellees was so offensive that it shocks the "judicial conscience," and thus he argues that he is entitled to maintain this action. This argument lacks merit.
 
 
 29
 Davis cites Rochin v. California, 342 U.S. 165 (1952), in support of his proposition. In Rochin, the Court reversed the defendant's conviction because it held that the police officers had violated his due process rights when they illegally broke into his home and had the contents of his stomach forcibly extracted in order to obtain evidence. Id. at 172. The Court stated that "convictions cannot be brought about by methods that offend a sense of justice." Id. at 173 (quotations omitted).
 
 
 30
 Davis's reliance upon Rochin is misplaced. First, Rochin 's "shock-the-conscience" test has been subsequently rejected by the Supreme Court. Mapp v. Ohio, 367 U.S. 643, 666 (1961). Second, Rochin is factually distinguishable. Rochin arose within the context of an appeal from a criminal conviction and did not involve civil liability or the immunity doctrine. Therefore, Rochin does not permit Davis's suit.
 
 V. Leave to Amend
 
 31
 Because the appellees are entitled to immunity, there was no need to permit Davis to amend his complaint because no amendment could cure the deficiency. Ashelman, 793 F.2d at 1075, 1078.
 
 VI. Sanctions
 
 32
 We conclude that Davis's appeal was frivolous. "An appeal is frivolous when the result is obvious and the arguments on appeal wholly lack merit." McCarthy v. Mayo, 827 F.2d 1310, 1318 (9th Cir.1987). Therefore, pursuant to Fed.R.App.P. 38, we impose double costs as a sanction.
 
 
 33
 AFFIRMED. Double costs to appellees.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Davis also brought suit against several other defendants; however, they are not relevant to this appeal because Davis did not appeal the district court's decision to dismiss the action against them
 
 
 [2]
 We note that in his notice of appeal, Davis states that he appeals two additional decisions rendered by the district court: (1) dismissal of § 1983 conspiracy claims; and, (2) summary judgment in favor of Nye County regarding his Fourteenth Amendment due process claim (malicious prosecution). However, because Davis did not brief these issues, we do not address them. See Wilcox v. Commissioner, 848 F.2d 1007, 1008 n. 2 (9th Cir.1988)
 
 
 [3]
 Section 172.175 requires a
 grand jury that is not impaneled for a specific limited purpose [to] inquire into:
 * * *
 (c) The misconduct in office of public officers of every description within the county which may constitute a violation of a provision of chapter 197 of NRS.
 Nev.Rev.Stat.Ann. § 172.175(1)(c) (1991).
 In addition, Nev.Rev.Stat.Ann. § 172.175(2) provides that "[a] grand jury that is not impaneled for another specific limited purpose may inquire into any and all matters affecting the morals, health and general welfare of the inhabitants of the county, or of any administrative division thereof, or of any township, incorporated city, irrigation district or town therein."