**Charles Michael FLANAGAN, Plaintiff,**

v.

**M. John SHAMO, Defendant.**

No. 99–73532.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 25, 2000.

Michael A. Rataj, Dearborn, MI, for plaintiff.

Thomas E. Marshall, Troy, MI, for defendant.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION AND ORDER DIRECTING PLAINTIFF'S COUNSEL TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED

ROSEN, District Judge.

### I. *INTRODUCTION*

The above-captioned action is presently before the Court on Defendant John Shamo's July 12, 2000 Motion for Reconsideration of the Court's June 29, 2000 bench ruling denying his motion to dismiss. Having reviewed and considered Defendant's Motion, Brief and supporting documents, the Court has determined that Defendant's Motion for Reconsideration should be granted and this case should, accordingly, be dismissed, with prejudice.

### II. *PROCEDURAL BACKGROUND*

Plaintiff Charles Michael Flanagan, a sergeant on the Detroit Police force, commenced this action against former Detroit Recorder's Court Judge M. John Shamo on July 16, 1999. Plaintiff's six-count Complaint alleging violation of 42 U.S.C. § 1983, and state law claims of malicious prosecution, abuse of process, false imprisonment, intentional infliction of emotional distress, and gross negligence is predicated upon actions taken by Judge Shamo on July 18, 1996 when he held Plaintiff in contempt of court for violating his order to remain in the courtroom after Plaintiff's testimony as a witness in an unrelated criminal case, *People v. Akrawi.* Judge Shamo was the presiding judge in that case.

After filing an Answer to Plaintiff's Complaint, Defendant Shamo subsequently filed a Fed.R.Civ.Pro. 12(b)(6) Motion to Dismiss seeking dismissal of Plaintiff's Complaint on judicial immunity grounds. The Court heard oral argument on Defendant's Motion on June 29, 2000. At that hearing, Plaintiff's counsel claimed that whether Judge Shamo actually instructed Plaintiff to remain in the courtroom on July 18, 1996 was a matter in dispute. In support of his argument, Plaintiff's counsel represented to the Court that Assistant Wayne County Prosecutor Robert J. Donaldson, who was the prosecuting attorney in the *Akrawi* case, testified in his deposition that he never heard Judge Shamo order Plaintiff to stay in the courtroom.[1]

---

1. At the June 29, 2000 hearing, in response to a question posed to him by the Court, Plaintiff's counsel stated the following:

MR. RATAJ: If I may, Your Honor. I believe that the particular issue the Court wants me to address really rises and falls on the factual question as to whether or not he did order him to stay in the courtroom. Because that's not clear, you know I know that the Court's proceeding on the assump-

Plaintiff argued that if the Judge never ordered Plaintiff to remain in the courtroom and the Judge simply told officers to go look for Plaintiff and bring him back, judicial immunity does not attach.

After hearing Plaintiff's counsel's arguments, the Court determined that the issue of whether Judge Shamo actually told Plaintiff to remain in the courtroom was disputed. And, because the issue of whether Judge Shamo had ordered Plaintiff to remain in the courtroom is critical to establish the foundation of whether or not the Judge Shamo engaged in a "judicial action" on July 18, 1996 so as to entitle him to the protection of judicial immunity, the Court denied Defendant's Motion to Dismiss without prejudice to the right to renew his claims of judicial immunity after completion of discovery on this issue.

## III. DEFENDANT'S MOTION FOR RECONSIDERATION

On July 12, 2000, Defendant filed the instant Motion for Reconsideration asking the Court to reconsider and reverse its June 29 ruling denying of his motion to dismiss. In support of his Motion, Defendant submitted the transcript of the July 18, 1996 Detroit Recorder's Court proceedings in the *Akrawi* case and the transcript of the February 12, 1999 deposition of Assistant Wayne County Prosecutor Robert Donaldson.

The transcript of the July 18, 1996 proceedings in the *Akrawi* case makes it clear that Judge Shamo did direct Plaintiff to remain in the courtroom after he completed his testimony.

After both the prosecutor and defense counsel indicated that they had no further questions for Sergeant Flanagan on July 18, 1996, Judge Shamo stated the following:

> [Sergeant Flanagan completes his testimony.]

MR. HOWARTH [Defense counsel]: Nothing else. Thank you.

MR. DONALDSON [Prosecutor]: No questions.

THE COURT [Judge Shamo]: Ladies and gentlemen, step into the jury room. You can step down, Sergeant, **but stay in the courtroom.**

[July 18, 1996 Recorder's Court Transcript, Motion for Reconsideration Ex. C, p. 9]

Further, contrary to Plaintiff's counsel's representations at the June 29 hearing, Assistant Prosecutor Donaldson confirmed in his deposition that Judge Shamo ordered Flanagan to remain in the courtroom. He testified as follows:

> Q [by Plaintiff's counsel, Mike Rataj]: Now, let's talk about the incident that gave rise to Sergeant Flanagan's incarceration. Off your memory **did Judge Shamo order Sergeant Flanagan to remain in the courtroom?**
>
> A [by Mr. Donaldson]: **Yes, as he was on the stand.**
>
> Q: ... Subsequently Sergeant Flanagan left the courtroom?
>
> A: He did.

[Donaldson Feb. 12, 1999 Dep., Motion for Reconsideration Ex. D, p. 60.]

The standards governing motions for reconsideration are set forth in Eastern District Local Rule 7.1(g)(3):

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present issues ruled upon by the court, either expressly or by reasonable implication. **The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will**

tion that, in fact, Judge Shamo did order Flanagan to stay in the courtroom. The prosecutor never heart it; he testified to

that. Flanagan never heard it; he testified to that. So there's a factual question.

**result in a different disposition of the case.**

L.R. 7.1(g)(3) (emphasis added).

The Court finds that Defendant has sufficiently established through his submission of the two transcripts "a palpable defect by which the Court was misled" in that the Court denied Defendant's Motion to Dismiss based on the representations of Plaintiff's counsel that Assistant Prosecutor Donaldson had testified in his deposition that Judge Shamo did not order Plaintiff to remain in the courtroom after testifying on July 18, 1996. As the transcripts demonstrate, Plaintiff's counsel's assertions at the June 29, 2000 hearing are not supported by the record.

With the record now establishing that Defendant Shamo did, in fact, order Plaintiff *to remain in the courtroom*, the Court will reconsider Defendant's Motion to Dismiss. As indicated, the basis of Defendant's Motion to Dismiss is that Plaintiff's claims against Judge Shamo are barred by judicial immunity.

## IV. *PERTINENT FACTS*

Plaintiff Charles Flanagan is a 14–year veteran of the Detroit Police Department. As indicated above, Defendant John Shamo was at the time of the incident complained of a Detroit Recorder's Court Judge. Judge Shamo is now retired from the bench.

In July 1996, Plaintiff was called to testify as a witness in the case of *People v. Luis Akrawi* in Detroit Recorder's Court. Judge Shamo presided over the *Akrawi* matter.

Mr. Akrawi was charged and later convicted of first-degree murder. Judge Shamo entered a pre-trial "gag order" in the case, precluding out of Court discussions of the case. Judge Shamo learned during the trial that Plaintiff violated that gag order.

Plaintiff testified at the *Akrawi* trial on July 10, 1996 and was later re-called on July 18, 1996 for further testimony. After completing his examination on July 18, Judge Shamo excused Plaintiff as a witness but instructed him to remain in the courtroom for the purpose of serving him with a Show Cause Order for violating the gag order. Judge Shamo then left the bench for a few minutes. Plaintiff left the courtroom when the judge left the bench.

When Judge Shamo returned to the bench and saw that Plaintiff was no longer in the courtroom, he announced that Plaintiff was being held in contempt for violating the order to remain in the courtroom. Plaintiff was then paged by the prosecutor to return to the courtroom, which he did approximately 18 minutes later. Upon Plaintiff's return, Judge Shamo summarily informed Flanagan that he was being held in contempt for violating the order to remain in the courtroom and sentenced him immediately to 10 days in jail. Plaintiff was not given any opportunity to address the court, retain counsel to represent him, or to excuse or mitigate his conduct or attitude at sentencing.[2] Plaintiff was held at Wayne County Jail for one night. The next day, the Michigan Court of Appeals granted a Motion for Immediate Consideration and a Motion to Stay for the remaining nine days of the sentence in conjunction with Plaintiff's filing of an appeal of right.

On December 19, 1997, the Michigan Court of Appeals reversed the adjudication of contempt of court and discharged Sergeant Flanagan. Flanagan subsequently instituted this action for damages against Judge Shamo claiming violations of 42 U.S.C. § 1983 and state tort law.

---

2. Plaintiff claims that Judge Shamo took the opportunity to summarily sentence him for contempt as a result of personal animosity toward him because of a civil rights action Plaintiff had previously filed against two of his Detroit Police Department superiors who were allegedly close friends of the judge.

## V. ANALYSIS

Defendant Shamo contends that inasmuch as he was acting in his judicial capacity at the time of the actions complained of, he is cloaked with judicial immunity, and, therefore, is immune from suit for damages arising out of the events at issue.

Plaintiff concedes that it is generally accepted that judges are absolutely immune from civil suits for money damages, but he contends that his case falls within one of two recognized exceptions to that rule. As this Court noted (sitting by designation) in *Barrett v. Harrington*, 130 F.3d 246 (6th Cir.1997), there are two narrow exceptions to judicial immunity:

■ [Judicial] immunity is overcome in only two instances:

First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

130 F.3d at 255 (quoting *Mireles v. Waco*, 502 U.S. 9, 11–12, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991)).

There is no dispute between the parties that Defendant's actions were judicial in nature, and, therefore, do not fall within the first of the above-noted exceptions. It is the second of these exceptions upon which Plaintiff relies claiming that Defendant acted "in the complete absence of all jurisdiction" over the Plaintiff. Plaintiff reasons that he was brought into court pursuant to a common law writ: the *subpoena ad testificandum*. Plaintiff fully honored the subpoena and was excused from giving further testimony. Because Plaintiff had been excused from testifying, Plaintiff contends that the judge no longer had any jurisdiction to order him, now a mere spectator, to remain in the courtroom. Therefore, he argues that the judge's order directing him to remain (and his subsequent contempt order and sentence for violating that order) violated his Fifth, Sixth, and Fourteenth Amendment rights and also renders the judge liable to him for damages for malicious prosecution, abuse of process, false imprisonment, intentional infliction of emotional distress, and gross negligence.

In support of this argument, Plaintiff relies, in large part, on the unpublished opinion by the Michigan Court of Appeals regarding the case at bar in which the appellate court stated that Judge Shamo "had no 'jurisdiction' to order Sergeant Flanagan to remain [in the courtroom] after his testimony was complete." *Flanagan v. Recorder's Court Judge*, No. 196396 (Mich.Ct.App., December 19, 1997), p. 2 [Plaintiff's Ex. 1]. The Court of Appeals' ruling reversed Plaintiff's adjudication of contempt of court and discharged the order. Specifically, the Court of Appeals' ruling stated as follows:

The trial court had no authority to order a mere spectator to remain in the courtroom merely for the court's convenience in serving criminal process. As the trial court had no jurisdiction to order Sergeant Flanagan to remain after his testimony was completed (there being no suggestion that Sergeant Flanagan was ordered to remain with an expectation that he might be again recalled as a witness), the law is clear that a charge of contempt will not lie for disobeying an order which the court had no jurisdiction to make.

*Flanagan, supra.*

In further support, Plaintiff relies upon the Ninth Circuit's decision in *Rankin v. Howard*, 633 F.2d 844, 849 (9th Cir.1980), in which the court held that if a court lacks personal jurisdiction, it lacks "all jurisdiction" and loses judicial immunity. Plaintiff here contends that since he had been excused from testifying in the *Akrawi* case, Judge Shamo had no basis thereafter for exercising personal jurisdiction over him. Therefore, Plaintiff argues, Judge Shamo lacked personal jurisdiction over him when he ordered him to remain in the courtroom

and held him in contempt for violating that order.

As an initial matter, to the extent that Plaintiff relies upon *Rankin v. Howard,* apparently Plaintiff is unaware that the Ninth Circuit has expressly **overruled** the ruling in that case that judicial immunity is abrogated under the "absence of all jurisdiction" exception where personal jurisdiction is lacking. *See Ashelman v. Pope,* 793 F.2d 1072 (9th Cir.1986). The *Ashelman* court expressly held that "[w]here not clearly lacking subject matter jurisdiction, a judge is entitled to immunity, *even if there was no personal jurisdiction over the complaining party."* 793 F.2d at 1076 (emphasis added).

■ Indeed, this is the rule of the majority of circuits, including the Sixth Circuit: it is only when the judge acts in the absence of *subject matter* jurisdiction that he is not cloaked with judicial immunity under the absence of all jurisdiction exception. *See, Green v. Maraio,* 722 F.2d 1013, 1017 (2nd Cir.1983); *Dykes v. Hosemann,* 776 F.2d 942 (11th Cir.1985) (en banc); *Holloway v. Walker,* 765 F.2d 517, 523 (5th Cir.), *cert. denied,* 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985); *John v. Barron,* 897 F.2d 1387, 1392 (7th Cir.1990); *White v. Bloom,* 621 F.2d 276, 279 (8th Cir.), *cert. denied,* 449 U.S. 995, 101 S.Ct. 533, 66 L.Ed.2d 292 (1980); *Sevier v. Turner,* 742 F.2d 262, 271 (6th Cir.1984). *See also, Mills v. Killebrew,* 765 F.2d 69, 71 (6th Cir.1985) ("A judicial officer acts in the clear absence of jurisdiction only if he knows that he lacks jurisdiction, or acts despite a clearly valid statute or case law expressly depriving him of jurisdiction.")

■ Further, that a judicial officer may have *exceeded his authority* does not abrogate judicial immunity. As the Sixth Circuit explained in *Sevier v. Turner, supra,*

A judicial officer does not act in the clear absence of jurisdiction if he merely acts in excess of his authority. *See Stump [v. Sparkman,* 435 U.S. 349,] 356, 98 S.Ct. [1099,] 1104, 55 L.Ed.2d 331

[ (1978) ]. . . . The Supreme Court has held, for instance, that if judicial officer exceeds his authority in a type of case that he normally has jurisdiction to hear, the officer has not acted in the clear absence of all jurisdiction. *See Stump,* 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7; *see also Lopez v. Vanderwater,* 620 F.2d 1229, 1234 (7th Cir.), *cert. dismissed,* 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980). Although the defendants in this case may have exceeded their authority in persuading Sevier to sign the consent order and in incarcerating him after the civil contempt hearing without the assistance of counsel, the defendants were empowered to handle Juvenile cases. The defendants, therefore did not act in the clear absence of all jurisdiction.

742 F.2d at 271. *See also, Ireland v. Tunis,* 893 F.Supp. 724 (E.D.Mich.1995), *aff'd,* 113 F.3d 1435 (6th Cir.1997).

Even the commission of grave procedural errors—including those involving due process—does not constitute judicial action taken in the clear absence of all jurisdiction. *See Stump v. Sparkman,* 435 U.S. 349, 359, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978). Nor is judicial immunity overcome by allegations of bad faith or malice. *Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly.")

■ Applying the foregoing authorities to the facts of this case, the Court finds that Judge Shamo was protected by judicial immunity when he ordered Plaintiff to remain in the Courtroom after testifying on July 18, 1996 and held him in contempt for not abiding by that order.

First, as the Sixth Circuit explained in *Ireland v. Tunis, supra,* all that is required for immunity purposes is a finding that the court has *some* subject matter jurisdiction. ("Generally, where a court has *some* subject matter jurisdiction, there is sufficient jurisdiction for immunity pur-

poses." 113 F.3d at 1441.) It is further generally accepted that Michigan courts are presumed to have jurisdiction, unless the matter in question is specifically excluded by law. *Id. See also, People v. Loukas,* 104 Mich.App. 204, 304 N.W.2d 532, 534 (1981). With respect to this case, there is no Michigan statute or court rule that denies a Recorder's Court Judge the ability to hold a person in contempt for disobeying the judge's directive.

To the extent that Plaintiff relies on the Michigan Court of Appeals statement in *Flanagan* that "the trial court *had no jurisdiction* to order Sergeant Flanagan to remain after his testimony was completed," as an initial matter the Court notes that nothing in that decision had anything to do with judicial immunity. Indeed, the issue before the Court of Appeals had nothing to do with holding the judge personally liable for Section 1983 or state law tort damages. Further, it is clear to this Court, from a full reading of the opinion, that the *Flanagan* court was speaking only of "personal" jurisdiction—not subject matter jurisdiction—and merely used interchangeably the words "jurisdiction" and "authority." The full text of the Court of Appeals ruling states as follows:

> Taking a view most favorable to the trial court, and therefore assuming that Sergeant Flanagan testified under subpoena, this common law writ, the *subpoena ad testificandum* .. is properly utilized only for the purpose of compelling the witness named therein to appear at a designated time and place to give evidence in a formal proceeding. Here, Sergeant Flanagan had fully honored the subpoena, and been excused from giving further testimony pursuant to that subpoena. Accordingly, the trial court's directive to him to remain in the courtroom was not addressed to him in his capacity as a witness, but at that point as a mere spectator. . . . **The trial court had no authority** to order a mere spectator to remain in the courtroom merely for the court's convenience in serving criminal process. **As the trial court had no jurisdiction** to order Sergeant Flanagan to remain after his testimony was completed (there being no suggestion that Sergeant Flanagan was ordered to remain with an expectation that he might be again recalled as a witness), the law is clear that a charge of contempt will not lie for disobeying **an order which the court had no jurisdiction to make.**

*Flanagan, supra,* pp. 2–3 (emphasis added).

Federal courts have been careful to note the distinction between a judicial officer's acts done merely "in excess of jurisdiction" and acts done "in the clear absence of all jurisdiction." The Supreme Court explained the distinction between these two types of deficiencies in jurisdiction by way of example in *Stump v. Sparkman, supra:*

> [I]f a probate judge with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7.

In other words, "A judge acts in the clear absence of all jurisdiction [only] if the matter upon which he acts is clearly outside the subject matter jurisdiction of the court over which he presides." *King v. Love,* 766 F.2d 962, 965 (6th Cir.1985), citing *Stump v. Sparkman, supra.*

The Michigan Court of Appeals statement that Judge Shamo "had no jurisdiction" to order Flanagan to remain in the courtroom or to hold him in contempt for violating that order is akin to the "judge of the criminal court who convicts a defendant of a nonexistent crime" discussed by the Court in *Stump.* There is nothing in the Court of Appeals decision to suggest that issuing a "stay put" order or making a

contempt determination are acts "clearly outside the subject matter jurisdiction" of the Recorder's Court. Indeed, Plaintiff does not dispute that all courts have general jurisdiction to act in aid of its orders (e.g., issuing a show cause order directing a person who violated a previous order of the court to appear and show cause why he should not be held in contempt). Nor does Plaintiff dispute that courts have general jurisdiction over courtroom administrative matters. Ordering a witness to remain in court—even after excusing him from his subpoena responsibilities—falls within that ambit, so long as the order is in aid of some lawful judicial function. That the judge may have been in error by summarily holding Plaintiff in contempt and sentencing him to jail instead of scheduling the matter for a show cause hearing to give Plaintiff an opportunity to be heard is not tantamount to acting "in absence of all jurisdiction."

As Judge Shamo's actions in this case do not fall within either of the two exceptions to judicial immunity, the Court finds that the Judge is entitled to the protection of judicial immunity and, as such, he may not be held liable for damages for the July 18, 1996 actions complained of by Plaintiff in this case. Therefore, Plaintiff's Complaint will be dismissed.

## VI. *SANCTIONS*

As indicated above, this Court originally denied Defendant's Motion to Dismiss on June 29, 2000 based upon Plaintiff's counsel's representation to the Court that Assistant Prosecutor Donaldson testified in deposition that he never heard Judge Shamo order Flanagan to stay in the courtroom after testifying in the trial before him on July 18, 1996. However, as shown above, counsel's representation has no evidentiary support.

At his deposition taken on February 12, 1999, Mr. Donaldson specifically testified that Judge Shamo ordered Sergeant Flanagan to remain in the courtroom. He never said in his deposition, "I did not hear Judge Shamo order him to stay." Donaldson's deposition, in fact, was taken by Plaintiff's counsel, Michael Rataj and it was in direct response to Mr. Rataj's question, "Did Judge Shamo order Sergeant Flanagan to remain in the courtroom?" that Mr. Donaldson testified, without qualification, "Yes, as he was on the stand." It is clear to the Court, in light of the foregoing, that Plaintiff's counsel misled the Court at the hearing on June 29, 2000 when he stated that Mr. Donaldson testified in his deposition that he never heard Judge Shamo order Flanagan to remain in the courtroom. It was based upon this representation that the Court denied Defendant's Motion to Dismiss and ordered the parties to proceed with discovery.

■ Fed.R.Civ.Pro. 11 provides that an attorney's factual representations to the court must have evidentiary support. *See* Fed.R.Civ.Pro. 11(b)(3). Rule 11 further authorizes a court, on its own initiative, to direct an attorney to show cause why he should not be sanctioned for conduct that appears to violate subdivision (b). Pursuant to 28 U.S.C. § 1927, the Court also is authorized to order an attorney who unreasonably multiplies the proceedings in a case to satisfy personally the excess costs, expenses and attorney's fees incurred because of his conduct. Further, the Court may rely on its inherent power to sanction an attorney for deceptive conduct it deems to be tantamount to bad faith. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

Pursuant to the foregoing authorities, it appears to the Court that Plaintiff's counsel's misrepresentation of Mr. Donaldson's deposition testimony is sanctionable.

Therefore, within ten days of the date of this Opinion and Order, Plaintiff's counsel, Michael Rataj, shall show cause in writing why sanctions should not be imposed for misleading the Court

## VII. *CONCLUSION*

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion for

Reconsideration be, and hereby is, GRANTED.

IT IS FURTHER ORDERED that, upon reconsideration, Defendant's Motion to Dismiss is GRANTED. Accordingly,

IT IS FURTHER ORDERED that this case be, and hereby is, DISMISSED, with prejudice.

IT IS FURTHER ORDERED that within ten (10) days of the date of this Opinion and Order, Plaintiff's counsel, Michael Rataj, shall SHOW CAUSE in writing why sanctions should not be imposed upon him for misleading the Court.

### JUDGMENT OF DISMISSAL WITH PREJUDICE

The Court having this date entered an Opinion and Order granting Defendant's Motion for Reconsideration and dismissing this case with prejudice,

NOW, THEREFORE,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that a JUDGMENT OF DISMISSAL, with prejudice be, and hereby is, entered.