**Doris ADAMS, Plaintiff-Appellant,**

v.

**Grainger W. McILHANY, Individually and as Presiding Judge of the 31st Judicial District of Texas, Defendant-Appellee.**

No. 84–1827.

United States Court of Appeals, Fifth Circuit.

June 27, 1985.

nation of abnormalities.'" 745 F.2d at 340–41 (citations omitted).

Spivey, Grigg & Kelly, Broadus A. Spivey, Paul E. Knisely, James C. Harrington, American Civil Liberties Foundation of Texas, Inc., Austin, Tex., Betty Wheeler, Amarillo, Tex., for plaintiff-appellant.

Waters, Holt, Fields & Waters, Bill Wyatt Waters, Pampa, Tex., Jim Mattox, Atty. Gen. of Tex., Scott Lyford, Asst. Atty. Gen., Austin, Tex., for defendant-appellee.

Before BROWN, POLITZ and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Doris Adams, the mother of three men tried before Texas Judge Grainger W. McIlhany, brought suit against the judge under 42 U.S.C. § 1983 after McIlhany sentenced her to thirty days in jail for contempt. The contempt arose from a letter Adams sent McIlhany four months previously intimating that he had dealt harshly with her sons because they could not afford to bribe him. Adams' sons were not required to spend time in prison. She was.

This case is an appeal from a dismissal on summary judgment. Because we find there is no genuine issue of material facts under which the appellant, Adams, may avoid the appellee's judicial immunity, we affirm the dismissal of the damages action. Moreover, finding no case or controversy which might warrant injunctive or declaratory relief, we also affirm the dismissal of Adams' claims for injunctive and declaratory relief.

I

Fed.R.Civ.P. 56(c) provides for the reviewing of motions for summary judgment; in pertinent part the rule reads:

The judgment sought shall be rendered forthwith if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law....

The burden is on the moving party to establish that there is no genuine issue of fact and the party opposing the motion should be given the benefit of every reasonable inference in his favor. *State of Pennsylvania v. Curtiss National Bank of Miami Springs*, 427 F.2d 395, 400 (5th Cir.1970).

Accordingly, on appeal we view all materials in the light most favorable to the appellant, Adams, to determine if there is any issue of material fact. If no such issue exists, we must then determine if the appellee is entitled to judgment as a matter of law. *Id.*

## II

Doris Adams brought this suit for damages and declaratory and injunctive relief against Grainger McIlhany, the Presiding Judge of the 31st Judicial District of Texas, after McIlhany ordered Adams imprisoned for thirty days for contempt of court. This dispute had its genesis in May and June of 1983, during which time Adams' three sons were facing criminal charges in McIlhany's court. Adams wrote to McIlhany twice, first on May 23, and then on June 8, complaining about the treatment her sons were receiving. She asserted that McIlhany and others were harassing her sons and that others got away with crimes either because of connections or bribes.

On June 10, McIlhany wrote to Adams. He stated, "I received your letters regarding your sons. I regret that they have not seen fit to reform to society."

Adams responded by writing on McIlhany's letter and sending it back to him. She complained again that her sons were being harassed. She also stated, "The only way you can win with the law any more is if you can buy your way out & its done every day. You know I can't pay so you stick my boys good." The envelope was postmarked June

14. At that time charges remained pending against two of Adams' sons. McIlhany placed both on probation, and the record shows no evidence of any proceedings after July 25.

On October 5, 1983, Adams was served with an order signed by McIlhany. The order directed her to appear in court on October 7 to show cause why she should not be held in contempt of court for stating in her letter of June 14 that McIlhany was "paid off by defendants."

When Adams appeared in court on October 7, without an attorney, McIlhany told her that it was her opportunity to present her defense. Adams was sworn in and explained that she had only meant to say that she could not afford to hire a lawyer. She added that she had not intended to make any accusations against McIlhany. He indicated that he did not accept her explanation, found her in contempt and sentenced her to serve thirty days in jail and to pay court costs. At no time did McIlhany inform Adams of any rights she might have or make any attempt to explain the nature of the proceedings. Adams served twenty-eight days in jail.

After Adams filed suit, McIlhany moved on March 16, 1984, to dismiss the complaint on the ground of absolute judicial immunity. The district court construed this as a motion for summary judgment and gave the parties until April 5 to submit whatever material they wished. On Adams' motion, the court extended the deadline to April 16. On April 16, Adams filed her response, requesting that the court either deny McIlhany's motion or hold it in abeyance until she could conduct further discovery. On July 2, Adams filed two notices of depositions, one being to take McIlhany's deposition. McIlhany then moved to stay discovery, and the court granted the motion. On September 7, the district court, 593 F.Supp. 1025, granted the motion for summary judgment and dismissed the case. Adams filed a timely notice of appeal.

## III

Because we find no genuine issue of material fact which would support a find-

ing that Judge McIlhany harmed Adams through acts other than judicial acts not performed in the clear absence of all jurisdiction, liability is prohibited by McIlhany's absolute judicial immunity. Accordingly, we affirm the district court's grant of summary judgment for McIlhany on the damages issue.

### A

■ Absolute judicial immunity extends to all judicial acts which are not performed in the clear absence of all jurisdiction. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). There is no question that those of Judge McIlhany's acts complained of here were "judicial acts" for immunity purposes. "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump,* 98 S.Ct. at 1107. Here, Adams' complaint concerns the issuance of a "show cause" order directing her to appear in court and the order directing her to be imprisoned for thirty days. Both of these acts are acts normally performed by a judge. Moreover, there is no question that in answering the "show cause" order and in her appearance before the court, Adams "dealt with the judge in his judicial capacity." That McIlhany may have been wholly motivated by personal malice does not in the least turn a judicial act into a nonjudicial act. *Bradley v. Fisher,* 13 Wall. 335, 20 L.Ed. 646 (1872); *Stump, supra.*

■ The four factors generally relied upon by this circuit in determining whether an act is "judicial" also support this characterization of Judge McIlhany's actions;

these are: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *McAlester v. Brown,* 469 F.2d 1280, 1282 (5th Cir.1972). The four-part *McAlester* test should always be considered in determining whether an act is "judicial"; however, the test factors should be broadly construed in favor of immunity,[1] and it should be born in mind that while the *McAlester* factors will often plainly indicate that immunity is available, there are situations in which immunity must be afforded even though one or more of the *McAlester* factors fails to obtain.[2] Nor are the factors to be given equal weight in all cases; rather, they should be construed in each case generously to the holder of the immunity and in the light of the policies underlying judicial immunity. Of primary importance among these policies is the need for independent and disinterested judicial decision-making; immunity should not be denied where the denial carries the potential of raising more than a frivolous concern in the mind of some future judge that to take proper action might expose him to personal liability. *Stump,* for example, extended immunity to an Indiana judge who authorized the sterilization of a young woman at her mother's request. *Stump* made it clear that the act of granting such a petition would have been a "judicial act" even if no other Indiana judge had ever considered a sterilization petition; the petition bore sufficient similarity to other petitions—such as a petition to permit a minor to enter into a binding contract—that a colorable legal argument might be based on an analogy with the sterilization

---

1. Accordingly, exceptions to judicial immunity based on narrow factual considerations, or technical or fine distinctions, must be avoided and those which exist should be as narrowly construed as reasonably possible.

2. Where, for example, a judge cites a person raising a disturbance immediately outside a

courtroom window for contempt, judicial immunity is plainly available although factors (2), (3) and (4) might not apply. Such contempt citations are both authorized by express act of Congress and are also inherent in the power of a court.

petition at some time in the future. *Stump*, 98 S.Ct. at 1107, n. 11. A future judge perceiving this possibility might be deterred by a potential suit or liability; such a possible distortion of the judicial decision-making process has been uniformly held to be unacceptable, especially when the availability of alternative remedies, such as appeal and impeachment, are included in the balance.[3]

■ With the above considerations in mind we turn to the *McAlester* factors. First, the issuance of a "show cause" order and citing for contempt are acts normally performed by a judge. Second, these acts are not alleged to have been performed in inappropriate places; Adams was ordered to come to court and she was sentenced in the courtroom. Third, the controversy in this case arose out of the criminal trial of Adams' sons, over which McIlhany presided. That the judge waited months to respond to the controversy was clearly a serious procedural error, but "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump*, 98 S.Ct. at 1106. Fourth, although there is no single "confrontation" out of which the present dispute arose; the most closely analogous event in this case was Adams' appearance before the court at which she was sentenced. This "visit" was plainly "to the judge in his official capacity"; that Adams was ordered to make her appearance does not distinguish this case from any case involving a subpoenaed witness or a case in which a person appears pursuant to an arrest warrant. It might also be argued that Adams' letter to McIlhany is the proper analogue to the *McAlester* "visit"; but this letter was also directed to McIlhany in his official capacity. Construed in accord-

ance with their underlying policy, all four *McAlester* factors indicate that the actions complained of in this case were "judicial acts" for the purpose of immunity analysis.[4]

**B**

■ McIlhany also had sufficient "jurisdiction," as that term is used in judicial immunity analyses, for his immunity to attach. Where a court has some subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes. *Bradley*, 13 Wall. at 352. Judge McIlhany's was a court of general jurisdiction empowered to punish for contempt. To deny the existence of "jurisdiction" in this case would raise the possibility that future cases might turn on the rather rarified question of whether a judge had cited for contempt and delayed sentence, or merely, as here, delayed both citation and sentence. It is certainly a valid exercise of judicial power for a judge to cite for contempt but leave the determination of sentence for a later time. If Adams had been cited for contempt for presenting her letters to the judge in the courtroom, or causing them to be delivered during her sons' trial, and imposition of her sentence had been delayed, there would be no question that judicial immunity would attach. We decline to create a potential ambiguity whose threat to disinterested decision-making is not obviously frivolous.

Adams points out that Texas courts are not empowered to punish summarily for "constructive" contempts such as the letters around which this case revolves. Adams draws our attention to longstanding Texas precedent prohibiting a Texas judge from citing an out-of-court contemnor as McIlhany did in this case. *See, e.g., Ex parte Ratliff*, 117 Tex. 325, 3 S.W.2d 406,

3. We express no opinion as to whether the availability of those alternative state remedies might alone bar the action under *Hudson v. Palmer*, ── U.S. ──, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

4. Our decision in *Harper v. Merckle*, 638 F.2d 848 (5th Cir.1981) is not to the contrary. That case restricted its holding denying immunity to

the "exceedingly narrow and ... rarest of factual settings." *Harper* at 859. Accordingly, that case, by its own terms, is virtually without precedential value. In addition, we note that *Harper*'s reliance on the "motives" of the judge is inconsistent with *McAlester, Bradley, Stump,* and *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

407 (1928). In addition, summary punishment for a constructive contempt is unconstitutional. *Sandstrom v. Butterworth,* 738 F.2d 1200 (11th Cir.1984). However, we are to construe a court's jurisdiction broadly when immunity is the issue. *Stump,* 98 S.Ct. at 1005. For the purposes of defining "jurisdiction" in this section 1983 immunity case, it is sufficient that McIlhany's court was a court of general jurisdiction empowered to cite for contempt, and that to deny immunity in the present case might create an ambiguity in the law which would pose more than a frivolous threat to disinterested judicial decision-making.

## IV

In addition to damages, Adams also seeks injunctive and declaratory relief. The district court dismissed these claims for failure to make out a constitutionally required "case or controversy." [5]

### A

■ The district court did not err in denying the availability of injunctive relief in this case; there is simply no case or controversy as required by Article III of the Constitution in which a federal court may grant injunctive relief. Adams, "having been released from jail, no longer ha[s] a live controversy as to either the contempt citation or the ... period[ ] of incarceration which would entitle ... [her] to injunctive relief." *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Adams lacks standing to pursue injunctive relief in federal court; accordingly, we affirm the dismissal of her claim for injunctive relief.

### B

Nor did the district court err in dismissing the claim for declaratory relief:

"[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues 'concrete legal issues, presented in actual cases,

not abstractions' are requisite. This is as true of declaratory judgments as any other field. *United Public Workers of America (C.I.O.) v. Mitchell,* 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

*Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 959–960, 22 L.Ed.2d 113 (1969) (emphasis supplied).

■ The fact that it is most unlikely that Adams will again come into conflict with Judge McIlhany in circumstances similar to the ones presented here, and with the same results, precludes a finding that there was "sufficient immediacy and reality here to warrant an action for declaratory relief." *Id.* 89 S.Ct. at 960.

## V

In this case we have determined that Adams' claim for damages is precluded by the doctrine of absolute judicial immunity. In addition, her claims for injunctive and declaratory relief must be disallowed for failure to present a sufficient "case or controversy" under Article III. Accordingly, we affirm the district court's dismissal of this entire action.

AFFIRMED.

---

5. Judicial immunity does not bar actions for prospective injunctive relief under section 1983.

*Pulliam v. Allen,* —— U.S. ——, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984).