Teresa **CINTRON RODRIGUEZ** and
Enrique Figueroa Garcia, Plaintiffs,

v.

Joyce A. **PAGAN NIEVES**, Defendant.

Civ. No. 89–1194 (JAF).

United States District Court,
D. Puerto Rico.

April 27, 1990.

Luis R. Mellado–González, San Juan,
P.R., for plaintiffs.

José A. Pagán Nieves, San Juan, P.R.,
for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

This action, brought under 42 U.S.C. section 1983, challenges the legality of a contempt order issued by defendant Joyce A. Pagán–Nieves, who at all times pertinent to this case was serving as a District Court Judge for the Commonwealth of Puerto Rico. Ms. Pagán–Nieves has moved for dismissal on the grounds that she is entitled to absolute immunity from damages for acts performed pursuant to her judicial role. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Plaintiffs oppose. For the following reasons, defendant's motion is GRANTED.

### I.

The essential facts are not in dispute. The plaintiffs in this case are a married couple, Teresa Cintrón Rodríguez and Enrique Figueroa. They reside in Guaynabo, Puerto Rico and are the parents of several children including Melvin Figueroa Cintrón, aged thirty.

In 1981 the younger Mr. Figueroa fathered a child as the result of extra-marital relations with the child's mother, Carmen Diaz Guzmán. Sometime thereafter Ms. Diaz obtained an award of child support in the amount of $25 per week to be paid by Mr. Figueroa. By July 1986, Mr. Figueroa had fallen behind in his support payments and as a result Guaynabo District Court Judge Victor Toro ordered him arrested for civil contempt. That order was never carried out, however, because by this time Mr. Figueroa no longer resided in Puerto Rico, having moved to New York.

On or about August 1988, plaintiffs got wind of the contempt proceedings against

their son and of the fact that Guaynabo District Court Judge Alma S. de León Ostolaza had set a hearing in the case. Shortly thereafter, the younger Mr. Figueroa sent the plaintiffs a money order in the amount of $1,000 in partial payment of the money he owed in back child support.

On August 30, 1988, Mrs. Cintrón, a fifty-three year old housewife, went to the court building in Guaynabo with the intent of delivering the money she received from her son. After speaking to Judge De León's secretary, who in turn communicated with the judge, Mrs. Cintrón was advised that the judge had authorized the acceptance of the money order in partial payment of her son's support obligations. Mrs. Cintrón then delivered the money to the clerk's office. Meanwhile, Judge De León apparently entered a handwritten order on the file of the case noting the payment and calling for Mrs. Cintrón to appear in court the following morning with her son's address. Mrs. Cintrón, however, alleges she was never informed of this order, or of the need to produce her son's address, but that she was merely told by the judge's secretary to appear in court the next day.

The next morning Mrs. Cintrón showed up at the courtroom presided over by then-judge Joyce A. Pagán Nieves and sat among the public. At some point Judge Pagán–Nieves asked Mrs. Cintrón to approach the bench and requested her to turn over her son's address. Mrs. Cintrón replied that her son had gone to live in the continental United States and that she did not yet know his exact address. Judge Pagán–Nieves then found that by not revealing her son's whereabouts Mrs. Cintrón had violated Judge De León's order entered the day before. Mrs. Cintrón was found in contempt and given a ten-day prison sentence that was soon amended to thirty days. She was arrested, processed, and taken to the Vega Alta Prison Center where, in the words of the complaint, she was subjected to "inhumane conditions in common imprisonment with drug addicts, lesbians, and all sort of criminals, suffering great anguish and pain both physically and emotionally." Complaint at paragraph 9. Mrs. Cintrón remained jailed for three nights before Judge De León entered an order vacating the contempt decree, at which point she was released. She and her husband now bring this section 1983 action against Judge Pagán–Nieves claiming that her imprisonment violated her federal constitutional rights under color of state law.

## II.

In *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), the United States Supreme Court reaffirmed as a "general principal of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." 98 S.Ct. at 1104, *quoting Bradley v. Fisher,* 13 Wall. 335, 347, 20 L.Ed. 646 (1872). Thus, the Court held that judges of courts of general jurisdiction "are not liable for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." 98 S.Ct. at 1104, *quoting* 13 Wall. at 351.

Though judicial immunity, as outlined in *Stump v. Sparkman,* is quite broad, it has been subjected to two requirements. First, the immunity pertains only to those acts "judicial" in nature. 98 S.Ct. at 1106–08. Second, a judge will not benefit from judicial immunity and will be exposed to liability for his actions "when he acted in the 'clear absence of all jurisdiction.'" *Id.* at 1106–08. *See also Cok v. Cosentino,* 876 F.2d 1, 2 (1st Cir.1989); *O'Neil v. City of Lake Oswego,* 642 F.2d 367, 369 (9th Cir.1981).

The first requirement is met in the case at hand. The Supreme Court has noted that "whether an act by a judge is a 'judicial' one [depends on] the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and [on] the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman,* 98 S.Ct. at 1107. Here, defendant's action of convicting plaintiff of contempt and sentencing her on that charge is the type of function normally performed by a judge of general jurisdiction. Moreover, Mrs. Cintrón, who solicited Judge De Leon on her son's behalf

and latter showed up in Judge Pagán–Nieves' court as an outgrowth of this effort, was clearly dealing with Judge Pagan in her judicial capacity. In short, the act complained of was undoubtedly "judicial" in nature. *O'Neil v. City of Lake Oswego*, 642 F.2d at 369.

The second requirement is also met. Although plaintiffs' complaint and the opposition to the motion to dismiss, allege various procedural irregularities in Judge Pagan's issuance of the contempt order, plaintiff must prove more than mere procedural errors, even grave errors, in order to divest a judge of judicial immunity. *Stump v. Sparkman*, 98 S.Ct. at 1106; *O'Neil v. City of Lake Oswego*, 642 F.2d at 367. Where a court has some subject matter jurisdiction to perform the act complained of, there is no "clear absence of jurisdiction" for immunity purposes. *Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir.1985), citing *Bradley*, 13 Wall. at 352. The complaint in this case contains no allegation that the defendant, a judge in a court of general jurisdiction, was not empowered to punish for contempt. Rather, plaintiffs rely on allegations that their son's case was not officially docketed on the day in question and that Mrs. Cintrón was not properly notified, served and brought before the court.[1] But as we have already indicated, judges are granted immunity "when they rule on matters belonging to categories within their court's jurisdiction, even when they fail to comport with procedural niceties necessary to give the court power over the particular matter." *O'Neil v. City of Lake Oswego*, 642 F.2d at 370. Because both requirements are met, we hold that the defendant is entitled to judicial immunity for money damages in relation to issuing a contempt order and sentencing the plaintiff pursuant to that order. We note numerous reported cases in accord. *See, e.g., Adams v. McIlhany*, 764 F.2d 294 (5th Cir.1985); *O'Neil*

*v. City of Lake Oswego*, 642 F.2d 367 (9th Cir.1981); *Williams v. Sepe*, 487 F.2d 913 (5th Cir.1973); *McAlester v. Brown*, 469 F.2d 1280 (5th Cir.1972). *See also Robinson v. McCorkle*, 462 F.2d 111 (3rd Cir. 1972) (judge who imprisoned plaintiff under repealed summary commitment statute entitled to absolute immunity). *But see Harper v. Merckle*, 638 F.2d 848 (5th Cir.1981) (judge not entitled to judicial immunity when it is beyond reasonable dispute that judge acted out of personal motivation and used his office as an offensive weapon to vindicate personal objectives, and it further appears certain that no party has invoked the judicial machinery for any purpose.)

The complaint is DISMISSED.[2]

IT IS SO ORDERED.

---

1. The opposition to the motion to dismiss argues that the court did not obtain personal jurisdiction over Mrs. Cintrón prior to finding her in contempt. Assuming this allegation is true, we do not see how it is relevant to the question of judicial immunity, which turns on a court's authority over the subject matter and not over the

parties before it. *See Dykes v. Hosemann*, 776 F.2d 942 (11th Cir.1985).

2. Because we dispose of this case on the grounds of judicial immunity we need not address the other arguments raised in defendant's motion to dismiss.