IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 91-3757
_____

THOMAS MARTIN MALINA
and
MRS. THOMAS MARTIN MALINA,

Plaintiffs-Appellants,

VERSUS

JUDGE DOUGLAS GONZALES

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____
(June 25, 1993)

Before SMITH and EMILIO M. GARZA, Circuit Judges, and RAINEY*,
District Judge:

JOHN D. RAINEY, District Judge:

This is an appeal from the denial of a motion to dismiss based
on the district court's finding that a state district judge did not
have immunity for his actions.

While driving home from work one night on Interstate 10,
Plaintiff-Appellee Thomas Malina passed to the right of a slow
moving vehicle. Malina honked his horn and motioned to the driver,
who was Defendant-Appellant Judge Douglas Gonzales, of the
Nineteenth Judicial District court for the Parish of East Baton
Rouge, to move out of the "fast" lane.

Upset by Malina's honking, Judge Gonzales placed a flashing

*District Judge of the Southern District of Texas, sitting by
designation

red light on his dashboard and pursued Malina's vehicle until Malina pulled over to the side of the road. Judge Gonzales opened the passenger side door of Malina's car and demanded to see Malina's driver's license. In response, Malina asked to see Judge Gonzales' identification. Judge Gonzales showed Malina his court I.D. and told Malina he had the authority to arrest him. Malina then drove off.

Three hours later, a Baton Rouge city police officer appeared at Malina's home and told Malina that Judge Gonzales wanted to see him in his court at 9:30 a.m. the next day. The officer stated that he was there unofficially as a favor to Judge Gonzales, but the Judge could issue a bench warrant for Malina's arrest if Malina did not appear in court.

Malina appeared at court the next morning, but found the courtroom closed to the public. When Judge Gonzales arrived, he instructed Malina to wait in the empty courtroom. A few minutes later, Judge Gonzales, a bailiff, and a deputy sheriff entered the courtroom. The bailiff said "all rise," and Judge Gonzales instructed Malina to approach the bench. No audio or stenographic record was made of the proceeding.

According to Malina, the Judge read from a book and stated that judges are police officers with the authority to arrest individuals. The Judge handed a green slip of paper to the bailiff and told Malina to appear before the duty-judge on May 2, 1988,

2

concerning traffic violations.  Malina asked with what he had been charged, and Judge Gonzales responded with "fleeing to allude," "resisting an officer," "public endangerment," "disobeying an officer," "reckless driving," and "leaving the scene."  The Judge added that the charges would convince Malina to obey an order and pull over the next time anyone with a flashing light pulled alongside him.  Malina responded that he did not feel comfortable stopping for unmarked vehicles with flashing lights because anyone can buy such a light.

At this point, Judge Gonzales cited Malina with contempt and sentenced him to five hours in jail.  Malina was handcuffed, fingerprinted, photographed, and imprisoned.

Malina and his wife brought suit against Judge Gonzales in his official capacity and individually.  In response, Judge Gonzales filed a motion to dismiss based upon official immunity.  The District Court of the Eastern District of Louisiana denied Judge Gonzales' motion to dismiss the claim against him in his individual capacity, on the ground that the Judge was not entitled to judicial or qualified immunity.  Judge Gonzales now appeals the denial of his immunity claim.  We affirm in part and reverse in part.

## I.  Standard of Review

The denial of a motion to dismiss raising a colorable claim of immunity is appealable under the collateral order exception to the finality requirement of 28 U.S.C. § 1291.  Williams v. Brooks, 945 F.2d 1322, 1325 (5th Cir. 1991), cert. denied, 112 S. Ct. 1996 (1992).  The district court's denial of a motion to dismiss on

3

immunity grounds presents a question of law, reviewable de novo.
Id.


## II.  Judicial Immunity

Absolute judicial immunity extends to all judicial acts that are not performed in the clear absence of all jurisdiction. Adams v. McIlhany, 764 F.2d 294, 297 (5th Cir. 1985), cert. denied, 474 U.S. 1101 (1986).  Thus, a judge has no immunity (1) for actions taken outside of his judicial capacity, or (2) for actions that are judicial in nature, but occur in the complete absence of all jurisdiction. Mireles v. Waco, 112 S.Ct. 286, 288 (1991).  Judge Gonzales' actions form four separate incidents.  The first is the stop on the highway.  The second is Judge Gonzales' use of an officer to unofficially summon Malina.  The third is the charging of Malina with various "crimes," and the fourth is the issuance of the contempt citation and five hour jail sentence.

In determining whether Judge Gonzales' actions were "judicial in nature," this Court considers four factors:  (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. McAlester v. Brown, 469 F.2d 1280, 1282 (5th Cir. 1972). The four factors are to be broadly construed in favor of immunity, and immunity should not be denied where the denial carries the

4

potential of raising more than a frivolous concern in a judge's mind that to take proper action might expose him to personal liability. Adams, 764 F.2d at 297. In some situations, immunity is to be afforded even though one or more of the McAlester factors is not met. Id.

The relevant inquiry regarding the first factor )) whether the precise act complained of is a normal judicial function )) is to examine the "nature and function" of the act, not the act itself. Mireles, 112 S.Ct. at 288-89. The Court is to look to the particular act's relation to a general function normally performed by a judge. Id.

Except for the issuance of the contempt citation and the sentencing, none of Judge Gonzales' actions were judicial acts for immunity purposes. The first three incidents are not closely related to a general judicial function. Peace officers, not judges, stop motorists on the highway, and prosecutors, not judges, set the judicial machinery in motion by charging someone with a crime. It is well settled that charging a defendant is a prosecutorial function, not a judicial function. See Lopez v. Vanderwater, 620 F.2d 1229, 1235 (7th Cir.), cert. denied, 449 U.S. 1028 (1980). Additionally, Judge Gonzales' private use of an officer to unofficially summon Malina is not a judicial act, and is not closely related to a general judicial function. Consequently, Judge Gonzales can claim judicial immunity for neither the stop, the summons, nor the charging.

Judge Gonzales can, however, claim judicial immunity for the

5

issuance of the contempt citation and the five hour jail sentence.

Citing someone for contempt is an act normally performed by a judge. Adams, 764 F.2d at 298. Likewise, issuing a sentence is a general judicial function. Lopez, 620 F.2d at 1235 (judge immune for actions of arraigning, convicting and sentencing). Both the contempt citation and the sentencing were "normal judicial functions." Furthermore, the contempt citation and the sentencing occurred in the courtroom and arose directly from Malina's visit to the Judge in his official capacity. Malina's appearance at court, despite the Judge's highly irregular "summons," was a visit to the Judge in his "official capacity" as a judge. See, Adams, 764 F.2d at 297. Consequently, Judge Gonzales' actions pass the "judicial nature" prong of the Mireles inquiry.

The second prong of the Mireles test states that a judge will lose his immunity if his judicial act occurred in the complete absence of all jurisdiction. Thus, this Court must determine whether Judge Gonzales had some subject-matter jurisdiction to issue the contempt citation and sentence.[1]

Where a court has some subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes. Adams, 764 F.2d at 298. The question is whether Judge Gonzales merely acted in excess of his authority in issuing the contempt citation and sentence, and is thus protected by judicial immunity, or whether he acted in

[1]Viewing the case as a question of subject-matter jurisdiction is consistent with the position taken by a majority of the Circuits and the Supreme Court. See, e.g., Adams, 764 F.2d at 298; Brewer v. Blackwell, 692 F.2d 387 (5th Cir. 1982); and Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1871).

6

clear absence of all jurisdiction.  See, My. Schwartz & J. Kirklin, I Section 1983 Litigation § 9.3 at 451 (1911).  It is important to note that "judicial immunity is not overcome by allegations of bad faith or malice."  Mireles, 112 S.Ct. at 288.  It is the Judge's actions alone, not intent, that we must consider.

By law, a judge in Louisiana may hold someone in contempt and sentence him for "[c]ontumacious, insolent, or disorderly behavior toward the judge."  La. Code Civ. Proc. Ann. art. 222.  See also, La. Code Civ. Proc. Ann. arts. 221 and 223.  Thus, Judge Gonzales had some subject-matter jurisdiction over Malina's actions within his courtroom.  Malina argues, however, that he was not sentenced for his behavior within the courtroom, but that he was sentenced for what occurred on the highway.

The district court assumed Malina's version of the facts as true, and found that Judge Gonzales essentially "sentenced" Malina to jail for the "charges" brought against him.  It is not clear from the record if charges were ever filed against Malina.  For the purpose of a motion to dismiss, however, this Court must assume all well-pleaded allegations as true.  Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1572 (5th Cir. 1988).  Thus, the question is whether Judge Gonzales acted with the complete absence of all jurisdiction, having absolutely no subject matter jurisdiction to sentence Malina for "fleeing to allude," "resisting an officer," "public endangerment," "disobeying an officer," "reckless driving," and "leaving the scene."

A review of the Louisiana Code reveals that Judge Gonzales did

7

have some subject-matter jurisdiction over the case. According to Article 5, section 16 of the State Constitution, a district court has original jurisdiction of all civil and criminal matters, except as otherwise authorized by the Constitution. The charges brought against Malina did not fall within the "otherwise authorized" exception. Accordingly, Judge Gonzales had at least some subject-matter jurisdiction over Malina's case.

Judge Gonzales' illegitimate prior acts of arrest and summons are ill-received by this Court, but they did not completely deprive him of subject-matter jurisdiction. See Lopez, 620 F.2d at 1233. Even "grave procedural errors do not deprive a judge of all jurisdiction." Stamp v. Sparkman, 435 U.S. 349, 359 (1978).

Judge Gonzales' actions of citing Malina with contempt and sentencing him to five hours in jail are judicial acts, and they were not taken in the clear absence of subject-matter jurisdiction. Thus, under no set of facts can Malina overcome Judge Gonzales' entitlement to immunity for the contempt citation and sentence.

Accordingly, we reverse on this point.

### III. Qualified Immunity

Generally, the qualified immunity inquiry focuses on whether the contours of the right allegedly violated were sufficiently clear such that a reasonable official would understand that his action violated that right. Mouille v. City of Live Oak, 918 F.2d 548, 551 (5th Cir. 1990). This Court must determine if Judge Gonzales' actions violated a constitutional right, and if so, would a reasonable person have known he was violating that right.

8

Because we have found that Judge Gonzales had absolute judicial immunity in issuing the contempt citation, we do not need to reach the qualified immunity inquiry. We need only discuss whether the stop on the interstate and the summons into court are actions protected by qualified immunity.

Judge Gonzales argues that he did not violate Malina's Fourth Amendment rights on the interstate because no seizure occurred. A seizure can occur, however, through physical force or a "show of authority." California v. Hodari D., 111 S.Ct. 1547, 1552 (1991). Judge Gonzales stopped Malina on the interstate by flashing a red light, which is a show of authority. Thus, Judge Gonzales' argument is without merit.

Judge Gonzales further argues that even if a seizure occurred, a seizure must be unreasonable to create a constitutional violation. See, Brower v. County of Inyo, 489 U.S. 593, 599, (1989). Again, accepting Malina's version of the facts as true, the stop was unreasonable. Judge Gonzales stopped Malina because Malina honked his horn and motioned to the Judge to change lanes. This does not give rise to probable cause or reasonable suspicion. The facts simply do not support Judge Gonzales' contentions that the stop was reasonable and proper.

Because a constitutional violation occurred, we must address the immunity inquiry.

Ultimately, Judge Gonzales is not entitled to make a claim of qualified immunity for he was not a peace officer authorized to stop Malina. Judge Gonzales is no different than any other person

9

who purchases a red light and stops people on the interstate. This finding is consistent with our decision in <u>Brewer</u>, 692 F.2d at 396, in which we held that a Justice of the Peace had no authority to pursue and arrest the plaintiff, and thus no immunity for his actions.

Judge Gonzales attempts to show that he had authority under Louisiana law to arrest Malina, but the Judge's argument fails. The only authority cited by Judge Gonzales is Louisiana's murder statute, which defines first degree murder as the killing of a human being "when the offender has a specific intent to kill or to inflict great bodily harm upon a . . . peace officer engaged in the performance of his lawful duties." La. Rev. Stat. Ann., § 30(A)(2). The statute includes "judge" in its definition of "peace officer," but specifically limits its definition of peace officer "[f]or the purposes of" § 30(a)(2). La. Rev. Stat. Ann., § 30(b). Thus, this statute has no bearing on the case before us.

Moreover, under the "Peace Officer Standards and Training" section of the Louisiana annotated statutes, "peace officer" is defined as:

> any full-time appointed or commissioned employee of a sheriff's department, municipal police department, or the State Police, whose employment duties actually include the making of arrests, the performing of searches and seizures, or the execution of criminal warrants, and which is responsible for the prevention or detection of crime or for the enforcement of the penal, traffic, or highway laws of the state.

La. Stat. Ann., § 2402(1). Additionally, under section 2405, every peace officer must "successfully complete a basic law enforcement training course." As the District Court noted, Judge Gonzales has

10

not argued that he successfully completed any training course in the area of law enforcement.

Consequently, this Court finds that Judge Gonzales is not entitled to claim qualified immunity, for under a fair, and even charitable reading of Louisiana law, judges have no authority to make arrests. The district court correctly denied Judge Gonzales' motion to dismiss on qualified immunity grounds with regard to the interstate incident.

Judge Gonzales has not claimed immunity for the coercive summons by the police officer and the charging of Malina with various offenses, and he does not argue that a constitutional violation did not occur. Therefore, we affirm the district court's denial of qualified immunity as to this aspect of the case as well.

IV.

This case is affirmed in part and reversed in part.

EMILIO M. GARZA, Circuit Judge, concurring in part and dissenting in part.

I concur in almost every aspect of the majority opinion except one:  I would hold that Judge Gonzales is not absolutely immune from prosecution for holding Malina in contempt of court.[1]  This case is not a case of "excess jurisdiction,"[2] but rather a case of "clear absence of all jurisdiction."[3]  Crucial are the following

---

[1]  I am acutely aware of the possible misuses of this dissent.  As Judge Goldberg correctly pointed out:

> [T]he opening of any inroads weakening judicial immunity could have the gravest consequences to our system of justice.  Every judicial act is done "under color of law;" absent the doctrine, every judicial error affecting a citizen's rights could thus ultimately subject the judge to section 1983 liability.  To be sure, we can conjure converse chambers of horrors, but we cannot allow that to erode the necessary features of the immunity.  That judicial immunity is sometimes used as an offensive dagger rather than a defensive shield must not justify derogating its inviolability.  Even though there may be an occasional diabolical or venal judicial act, the independence of the judiciary must not be sacrificed one microscopic portion of a millimeter, lest the fears of section 1983 intrusions cow the judge from his duty.

*McAlester v. Brown,* 469 F.2d 1280, 1283 (5th Cir. 1970).  And like Judge Hill, I would caution those who read this opinion to be wary that this dissent  "is exceedingly narrow and is tailored to this, the rarest of factual settings." *Harper v. Merckle,* 638 F.2d 848, 859 (5th Cir. 1981) (footnote omitted).

[2]  *See Stump v. Sparkman,* 435 U.S. 354, 356-357, 98 S. Ct. 1099, 1105, 55 L. Ed. 2d 331 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the `clear absence of all jurisdiction.'" (citation and footnote omitted)).

[3]  My disagreement with the majority opinion does not stem from the standard of review.  The majority correctly states that "[a]bsolute judicial immunity extends to all judicial acts that are not performed in the clear absence of all jurisdiction[,]" or, conversely, "a judge has no immunity (1) for actions taken outside of his judicial capacity, or (2) for actions that are judicial in nature, but occur in complete absence of all jurisdiction." Maj. op. at 4 (citations omitted).
The majority also properly focuses on the four factors first articulated by Judge Goldberg in *McAlester* to determine whether Judge Gonzales acted in his judicial capacity))(1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

facts:[4]

> [A] Baton Rouge city police officer appeared at Malina's home and told Malina that Judge Gonzales wanted to see him in his court at 8:30 a.m. the next day. The Officer stated that he was there unofficially as a favor to Judge Gonzales, but the Judge could issue a bench warrant for Malina's arrest if Malina did not appear in court.

> Malina appeared at court the next morning, but found the courtroom closed to the public. When Judge Gonzales arrived, he instructed Malina to wait in the empty courtroom. A few minutes later, Judge Gonzales, a bailiff, and a deputy sheriff entered the courtroom. . . .

> [Judge Gonzales] read from a book and stated that judges are police officers with the authority to arrest individuals. The Judge handed a green slip of paper to the bailiff and told Malina to appear before the duty-judge on May 2, 1988, concerning traffic violations. Malina asked with what he had been charged, and Judge Gonzales responded with "fleeing to allude," "resisting an officer," "public endangerment," "disobeying an officer," "reckless driving," and "leaving the scene." The Judge added that the charges would convince Malina to obey an order and pull over the next time anyone with a flashing light pulled alongside him. Malina responded that he did not feel comfortable stopping for unmarked vehicles with flashing lights because anyone can buy such a light.

> At this point, Judge Gonzales cited Malina with contempt and sentenced him to five hours in jail. Malina was handcuffed, fingerprinted, photographed, and imprisoned.

---

*McAlester,* 469 F.2d at 1282. I also agree that these four factors should be broadly construed and that immunity may be afforded although one or more factors is not met. *See Adams v. McIlhany,* 764 F.2d 294, 297 (5th Cir. 1985). The question presented is not whether Judge Gonzales' action in holding Malina in contempt and sentencing him to five hours in jail was "judicial in nature," but rather whether it occurred "in complete absence of all jurisdiction." *But see infra* n.7.

[4]     The district court correctly held, in "deciding this [Rule 12(b)(6)] motion to dismiss, the court must accept `all allegations of the complaint . . . as true, along with any reasonable inferences that may be drawn therefrom.'" *See* Record Excerpts for Gonzales tab 4, at 6 (quoting *Watts v. Grayes,* 720 F.2d 1416, 1419 (5th Cir. 1983)). And so must we. *See Tanglewood East Homeowners v. Charles Thomas, Inc.,* 849 F.2d 1568, 1572 (5th Cir. 1988).

Maj. op. at 2-3.

Although I agree that Judge Gonzales, as a Louisiana state judge, had the power to punish for contempt, *see* La. Code Civ. Proc. Ann. art. 222 (West 1960), and that the issuance of the contempt citation occurred within a courtroom, no case was pending before Judge Gonzales.[5] He therefore lacked subject matter jurisdiction[6] for the purpose of judicial immunity. *See Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351 (1871); *Adams,* 764 F.2d at 298; *Brewer v. Blackwell,* 692 F.2d 387 (5th Cir. 1982). Moreover, Judge Gonzales' exercise of his contempt power *presupposed*, rather than *conferred* subject-matter jurisdiction.[7]

The only reason Malina was in the courtroom was because a Baton Rouge police officer))on an unofficial visit on behalf of Judge Gonzales))asked Malina to appear the next day. The jurisdiction prong for judicial immunity requires that judges

---

[5] Judge Gonzales' finding of contempt was a direct result of Malina's reaction to the charges and Judge Gonzales' admonition "that the charges would convince Malina to obey an order and pull over the next time anyone with a flashing light pulled alongside him." *See* Maj. op. at 5. "It is well settled that charging a defendant is a prosecutorial function, not a judicial function." *Id.,* (citing *Lopez v. Vanderwater,* 620 F.2d 1129, 1235 (7th Cir.), *cert. denied,* 449 U.S. 1028 (1980)). As a *prosecutor,* Judge Gonzales had no authority to hold Malina in contempt.

[6] *See* La. Code Civ. Proc. Ann. art. 2 (West 1960) ("Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted.").

[7] *See* La. Code Civ. Proc. Ann. art. 221 (West 1960) ("A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for authority."); *see also* La. Code Crim. Proc. Ann. art. 20 (West 1991) (same). *See also Detournion v. Dormenon,* 1 Mart., O.S. (1810) (holding that an insult to a parish judge acting as an auctioneer, is not a contempt of him in his judicial capacity, and cannot be punished); *Junius Hart Piano House v. Ingman,* 44 So. 850, 852 (citing with approval *Detournion*).

14

possess the authority to perform actions *relating to a matter before them. See, e.g., Mireles v. Waco,* ___ U.S. ___, 112 S. Ct. 286, 289, ___ L. Ed. 2d ___ ("[S]uch an action))taken in the very aid of the judge's jurisdiction *over a matter before him*))cannot be said to have been taken in the absence of jurisdiction." (emphasis added))*; Stump v. Sparkman,* 435 U.S. 349, 351-52, 98 S. Ct. 1099, 1102-03, 55 L. Ed. 2d 331 (1978) (stating that sterilization petition was before state court judge); *Adams,* 764 F.2d at 298 (stating that the objectionable contempt order arose out of a criminal case involving the plaintiff's sons, over which the judge presided). Moreover, Judge Gonzales's actions did not occur while he had subject matter jurisdiction over any other claim. *See Adams,* 764 F.2d at 297 n.2 (citing as an example of a judicially immune action, the situation where a judge cites a person raising a disturbance immediately outside his courtroom window for contempt, assumedly while ongoing proceedings are before the judge). Therefore, at the time Judge Gonzales cited Malina for contempt, he was acting in "clear absence of all jurisdiction."[8]

---

[8] I am also somewhat skeptical of the majority's conclusion that the issuance of the contempt citation was a judicial act. An application of the four *McAlester* factors reveals that the issuance of the contempt citation did not arise from: (1) a case pending before Judge Gonzales; or (2) a visit to Judge Gonzales in his official capacity. Although Malina was told))by a Baton Rouge police officer on an unofficial visit))to report to Judge Gonzales's courtroom, Malina was never told why he was being "summoned," or that he was going to be charged with a crime. In a case involving similarly egregious facts, we focused on these particular *McAlester* factors to support our holding that certain actions by a judge were not "judicial acts." *See Harper,* 638 F.2d at 858-59 (emphasizing third and fourth *McAlester* factors because the determination of what constitutes a "judicial act," must include a consideration of the "expectations

15

Furthermore, the factors that support immunity for judicial acts are not implicated by Judge Gonzales's conduct. As Chief Justice Warren stated:

> It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation.

*See Pierson v. Ray,* 386 U.S. 547, 554, 87 S. Ct. 1213, 1218, 18 L. Ed. 2d 288 (1967); *see also Thomas v. Sams,* 734 F.2d 185, 189 (5th Cir. 1984) (quoting *Pierson*). There was no case pending before Judge Gonzales when he held Malina in contempt. Thus, the policy behind judicial immunity))encouragement of "fearless decisionmaking" free from the intimidation of vexatious litigation))has no bearing on Judge Gonzales's conduct. Conversely, the dangers implicit in his conduct))over-reaching from the joinder of executive and judicial powers))have been apparent since before the Constitution. *See The Federalist* No. 47, at 303 (James Madison) (Clinton Rossiter ed., 1961) ("Were the power of judging joined . . . to the executive power, *the judge* might behave with all the violence of *an oppressor.*" (quoting Montesquieu)).

I would therefore hold that Judge Gonzales is not judicially immune for the issuance of the contempt citation and sentencing,

_____

of the parties"). *But see Adams,* 764 F.2d at 298 n.4 (noting that *Harper's* reliance on the personal motivation of the judge in arriving at its holding was inconsistent with Supreme Court and Fifth Circuit precedent).

16

because these "actions . . . [were] taken in the complete absence of all jurisdiction." *Mireles,* ___ U.S. at ___, 112 S. Ct. at 288. Accordingly, I would affirm the district court's denial of the motion to dismiss in its entirety.[9]

---

[9] For the reasons stated in this dissent, I would also affirm the district court's holding denying Judge Gonzales qualified immunity on the issue of Malina's contempt and sentence. *See Anderson v. Creighton,* 483 U.S. 635, 646, 107 S. Ct. 3034, 3042, 97 L. Ed. 2d 523 (1987) (stating that an official is protected by qualified immunity if his actions were reasonable under the law).